NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1144-13T2

GARDEN HOWE URBAN RENEWAL
ASSOCIATES, L.L.C.,

     Plaintiff-Appellant,

v.

HACBM ARCHITECTS ENGINEERS
PLANNERS, L.L.C.,

     Defendant/Third-Party
     Plaintiff-Respondent,

and

DEL-SANO CONTRACTING CORP.,

     Third-Party Defendant.

_____

> APPROVED FOR PUBLICATION
>
> **February 26, 2015**
>
> **APPELLATE DIVISION**

Argued January 6, 2015 — Decided February 26, 2015

Before Judges Yannotti, Fasciale and Hoffman.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1126-11.

Robert C. Scrivo argued the cause for appellant (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Mr. Scrivo, of counsel; Lawrence S. Cutalo and Andrew Gimigliano, on the briefs).

Thomas M. Madden argued the cause for respondent (Hack, Piro, O'Day, Merklinger, Wallace & McKenna, P.A., attorneys; Mr. Madden, of counsel; Mr. Madden and Christine McCarthy on the brief).

The opinion of the court was delivered by

YANNOTTI, P.J.A.D.

Plaintiff Garden Howe Urban Renewal Associates, L.L.C. appeals from an order dated July 2, 2013, barring its expert report; an order dated July 12, 2013, denying its motion to adjourn the trial date and extend the time for discovery; and an order dated September 24, 2013, dismissing its remaining claim with prejudice. We reverse.

## I.

In November 2004, HACBM Architects, Engineers, Planners L.L.C. ("HACBM") submitted a proposal to plaintiff for architectural and engineering services to "design and document" a roof-level addition and various alterations to an existing four-story building in Passaic (the "Project"). According to the proposal, the services required included "architecture, structural engineering, and mechanical, electrical, plumbing, and fire protection engineering."

The proposal indicated that the services would be provided in three phases. In the first phase, HACBM would analyze structural and building codes, review schematic design plans and

elevations, and develop preliminary plans, details and specifications. In the second phase, HACBM would develop the required "architectural, structural, mechanical, electrical, plumbing, and fire protection systems in sufficient detail to set forth the requirements for construction of th[e] project," and provide plaintiff with detailed plans and specifications "for the architectural and engineering systems described." In the third phase, HACBM would periodically observe and evaluate the construction progress, and visit the site on a semi-monthly basis during an eight-month construction period.

On November 19, 2004, James Robbins ("Robbins"), plaintiff's President, signed the agreement, accepting the proposal. The parties also executed a "Standard Form of Agreement Between Owner and Architect for a Small Project" of the American Institute of Architects ("AIA"), which set forth the architect's responsibilities (the "Agreement"). The Agreement stated that "[t]he Architect shall provide architectural services for the project, including normal structural, mechanical, and electrical design services. Services shall be performed in a manner consistent with professional skill and care."

In October 2008, plaintiff filed a complaint in the Law Division against HACBM, asserting professional malpractice

claims. In January 2009, HACBM filed an answer and counterclaim against plaintiff. In February 2009, plaintiff served an Affidavit of Merit (the "AOM") from David V. Abramson ("Abramson"), an architect licensed in New Jersey and New York.

In January 2009, Abramson provided a letter report concerning certain deficiencies in the construction documents. Abramson also provided a letter report, dated March 12, 2010, which addressed the replacement of "an existing means of egress stair" which was part of the Project ("Stairway No. 2"). Abramson analyzed certain provisions of the "Rehabilitation Subcode" in the State's Uniform Construction Code ("UCC"), N.J.A.C. 5:23-6.1 to -6.33. Based on that review, Abramson concluded that replacement of Stairway No. 2 and a related structure had not been necessary.

Plaintiff also served a report from Project Control Associates ("PCA"), dated April 15, 2010, which resulted from its investigation of the professional design and construction phase services that HACBM had provided for the Project. According to the report, the investigation was conducted and the report prepared by Harold M. Tepper ("Tepper"), a professional engineer; John Lyssikatos ("Lyssikatos"), a professional engineer; and Frank M. Graczyk ("Graczyk"), a licensed building code, fire protection code and mechanical code inspector. The

report stated that it had been prepared with Abramson's assistance.

Robbins was deposed in October 2010. During his deposition, Robbins indicated that, in addition to other claims against HACBM, plaintiff was asserting a claim for an alleged overpayment of approximately $900,000 to the general contractor on the Project, Del-Sano Contracting Corp. ("Del-Sano"). In addition, Robbins had authored a report detailing plaintiff's business-loss claim of about $1,150,000.

Based on Robbins's deposition testimony, HACBM filed a motion seeking: (1) leave to file a third-party claim against Del-Sano; (2) to bar PCA's "agents" and Abramson from being qualified as experts due to concerns that they were acting as advocates for plaintiff, rather than providing objective expert opinions; (3) to preclude Robbins from testifying as an expert as to plaintiff's business losses since he did not have the qualifications to do so; and (4) to limit Abramson's testimony to the replacement of Stairway No. 2.

It appears that the trial court did not rule on the motion. Rather, the parties agreed to the dismissal of the complaint without prejudice. On March 3, 2011, plaintiff filed a new complaint against HACBM. On April 12, 2011, HACBM filed an answer, counterclaim and third-party complaint against Del-Sano.

On May 13, 2011, Del-Sano filed an answer to the third-party complaint, and on May 23, 2011, plaintiff filed an answer to the counterclaim.

On June 22, 2011, HACBM filed a petition in the United States Bankruptcy Court under Chapter 7 of the Bankruptcy Act, 11 U.S.C.A. §§ 701-784, and proceedings in this case were stayed. The bankruptcy proceedings were completed on March 2, 2012.

On September 13, 2012, plaintiff filed an amended, four-count complaint against HACBM, which included a claim against Del-Sano. In count one, plaintiff alleged that HACBM breached the Agreement by, among other things, failing to address construction issues as they arose, provide adequate plans to construct the Project, undertake adequate job supervision, ensure proper implementation of the plans, and submit complete plans or revisions when required.

Furthermore, in count two, plaintiff alleged that HACBM was comprised of licensed architects and that it was negligent since it failed to meet the minimum standard of care "as set by the industry" with regard to the services provided for the Project. In addition, in count three, plaintiff claimed that HACBM breached a duty to provide architectural services in a non-negligent manner.

Moreover, in count four, plaintiff alleged that HACBM had contracted with Del-Sano to perform certain services for the Project. Plaintiff claimed that Del-Sano was obligated to carry out and implement the plans for construction that HACBM had prepared. Plaintiff stated that Del-Sano had not done so. Plaintiff alleged that, if HACBM is not found liable on these claims, Del-Sano should be held "accountable" for HACBM's "breaches."

Subsequently, the trial was scheduled for June 24, 2013, and later rescheduled for July 15, 2013. On April 25, 2013, HACBM filed a motion to bar PCA and its "agents" from testifying at trial. Among other things, HACBM argued that PCA's report should be barred because it was prepared by two professional engineers and a code official, rather than an architect. HACBM maintained that these individuals were not qualified to offer opinions in a case involving claims of architectural malpractice.

Plaintiff opposed the motion. Plaintiff argued that an architect had participated in the preparation of the report and the architect was prepared to testify on all issues. Plaintiff's counsel acknowledged that the report detailed various claims, and did not specify which of the authors would address each claim, but counsel said this could be clarified.

The judge considered HACBM's motion on June 21, 2013, and placed his decision on the record. The judge ruled that plaintiff's expert report was "inappropriate." The judge pointed out that this case involved claims of alleged architectural malpractice and that the report had not been prepared by an architect. The judge noted that an architect had contributed to the report, but said that was insufficient. The judge decided that the report should be barred except for the supplement pertaining to the replacement of Stairway No. 2. The judge stated, however, that the authors of the report could testify as to factual issues.

The judge noted that the case was scheduled for trial in July of 2013 and suggested that an application be made to adjourn the trial so that plaintiff could obtain another expert report, which would be "the fairest way to handle the matter."

The judge entered an order dated July 2, 2013, which provided in part that: (1) substantially all of the PCA report is barred; (2) Tepper, Lyssikatos and Graczyk could testify as to "factual issues"; and (3) Abramson's testimony would be limited to the replacement of Stairway No. 2.

Plaintiff thereafter made a motion to adjourn the trial date and to extend the time for discovery. Another judge entered an order dated July 12, 2013, denying the motion. On the order,

the judge noted that the case already had 802 days of discovery, with five discovery extensions, and that the case had previously been dismissed without prejudice. The judge concluded that plaintiff had failed to show exceptional circumstances for a discovery extension, which was required by the court rules.

The case was called for trial on July 15, 2013, but it was later rescheduled for trial on September 24, 2013. HACBM thereafter filed a motion to bar Abramson from testifying that it had deviated from the applicable standard of care because he did not include that opinion in his report. The trial judge noted that Abramson did not set forth an opinion that HACBM had deviated from the standard of care in his report. The judge ruled that, because Abramson was limited to the opinions in his report, he could not testify as to the standard of care and whether HACBM was negligent.

HACBM then moved for a directed verdict, arguing that plaintiff could not sustain its burden of proof on the sole remaining claim in the case, which was the claim regarding Stairway No. 2. The judge granted the motion and entered an order dated September 24, 2013, dismissing the complaint with prejudice. This appeal followed.

On appeal, plaintiff argues: (1) the motion judge abused his discretion by barring substantially all of the PCA report;

(2) the trial court erred by refusing to extend the time for discovery because plaintiff established exceptional circumstances for the extension; and (3) the trial judge erred by entering a directed verdict against plaintiff on the claim regarding Stairway No. 2.

## II.

We first consider plaintiff's contention that the motion judge mistakenly exercised his discretion by barring substantially all of PCA's expert report. Plaintiff contends that the judge erroneously determined that only an architect could testify as an expert in a case involving claims of architectural malpractice. Plaintiff further argues that the judge failed to conduct a "proper" inquiry into the qualifications of the proposed expert witnesses.

Expert testimony may be offered "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." N.J.R.E. 702. If so, "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Ibid. Thus, there are

> three basic requirements for the admission
> of expert testimony: (1) the intended
> testimony must concern a subject matter that
> is beyond the ken of the average juror; (2)

10

the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.

[State v. Kelly, 97 N.J. 178, 208 (citation omitted) (1984).]

In an action involving a claim of professional malpractice, "[t]he test of an expert witness's competency . . . is whether [that witness] has sufficient knowledge of professional standards to justify the expression of an opinion." Carey v. Lovett, 132 N.J. 44, 64-65 (1993) (citing Sanzari v. Rosenfeld, 34 N.J. 128, 136 (1961)). The determination of whether a proposed expert witness has sufficient knowledge of professional standards is committed to "the sound discretion of the trial court." Id. at 64. The trial court's decision may not be reversed unless "clearly shown to be erroneous as a matter of law." State v. Campisi, 42 N.J. Super. 138, 147 (App. Div. 1956) (citing Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141 (1950)), rev'd on other grounds, 23 N.J. 513 (1957).

Our opinion in Alliance for Disabled in Action, Inc. v. Continental Props., 371 N.J. Super. 398, 402 (App. Div. 2004), aff'd 185 N.J. 331 (2005), is instructive. There, the plaintiff brought suit against the developers and architect of a residential housing complex alleging, among other things, that the developers failed to comply with New Jersey's Barrier Free

Subcode (the "Barrier Free Subcode"), N.J.A.C. 5:23-7.1 to -7.31. In support of its claims, the plaintiff served three reports from its expert, a person who dealt with handicapped-accessibility matters for New Jersey Transit, and held a certificate issued by the State Department of Community Affairs, evidencing his completion of a course in the requirements of the Barrier Free Subcode. Id. at 405.

The trial court dismissed the plaintiff's claims against the architect, finding that the claims against this defendant were essentially a claim of architectural malpractice, and the claims could not proceed without the opinion of a licensed architect. Id. at 406. We noted, however, that not all experts must possess a professional license. Ibid. (citing Landrigan v. Celotex Corp., 127 N.J. 404, 421-22 (1992); State v. One Marlin Rifle, 319 N.J. Super. 359, 368 (App. Div. 1999)).

We concluded that the trial court erred by characterizing the case as involving a claim of architectural malpractice. Ibid. We observed that the plaintiff had not alleged that the defendant architect had "deviated from the standard of care governing architects charged with the responsibility for designing such a project." Ibid. We stated that the plaintiff's "claim was restricted to its allegation that the design of the project did not comply with the [S]ubcode." Ibid. We determined

that the plaintiff's expert was qualified to testify as to whether the complex was built in compliance with the Subcode. Ibid.

We are convinced that the motion judge in this case mistakenly barred substantially all of the PCA report merely because it was not signed by an architect. As we indicated in Continental Properties, not all experts must possess a professional license, and whether an expert witness may testify in a case involving a claim of architectural malpractice will depend on the claim involved, the specific allegations made, and the opinions that the expert proposes to offer at trial.

Here, plaintiff is pursuing claims of architectural malpractice. The PCA report details the standards of care for each claim being made. The standards of care are based in large part upon HACBM's alleged failure to comply with the UCC and several of its subcodes. The standards of care are also based on, among other things, the rules of professional conduct for architects, the AIA's Handbook of Professional Practice, and the Manual of Steel Construction of the American Institute of Steel (the "Steel Construction Manual").

The motion judge mistakenly failed to consider whether Tepper and Lyssikatos had sufficient knowledge and experience as professional engineers to opine as to the requirements of the

UCC, the UCC's subcodes, the Steel Construction Manual, and other structural requirements cited in the PCA report. Moreover, Graczyk is listed as one of the persons who prepared the report. According to the report, Graczyk is licensed as a building, fire protection, and mechanical code inspector. The motion judge mistakenly failed to consider whether Graczyk had the requisite qualifications to testify as to the code requirements referenced in the report and HACBM's alleged failure to meet those requirements.

In addition, the report states that it was prepared with Abramson's assistance. While Abramson authored a supplemental report concerning Stairway No. 2, there is no indication that his involvement was limited to preparing that supplement. The motion judge mistakenly failed to consider whether Abramson assisted with other sections of the report which cited standards pertaining to architects, and whether he was prepared to testify as to the opinions set forth in those sections of the report.

Furthermore, we note that the judge's ruling that a licensed professional engineer may not testify as an expert in a case involving alleged architectural malpractice is not supported by the statutes that govern the practice of architecture and engineering in this state. These statutes indicate that there is no clear demarcation of the line between

services that can be provided by licensed architects and by licensed engineers.

Architectural practice is regulated in New Jersey pursuant to N.J.S.A. 45:3-1 to -46. Under this statutory scheme, the term "architecture" is defined in part as "the art and science of building design and particularly the design of any structure for human use or habitation." N.J.S.A. 45:3-1.1c. The licensing statutes for architects also provide that the practice of architecture includes

> the rendering of services in connection with the design, construction, enlargement, or alteration of a building or a group of buildings and the space within or surrounding those buildings, which have as their principal purpose human use or habitation. These services include site planning, providing preliminary studies, architectural designs, drawings, specifications, other technical documentation, and administration of construction for the purpose of determining compliance with drawings and specifications.
>
> [N.J.S.A. 45:3-1.1k.]

Furthermore, the practice of engineering is subject to regulation in New Jersey under N.J.S.A. 45:8-27 to -60. The practice of engineering is defined to include

> any service or creative work the adequate performance of which requires engineering education, training, and experience and the application of special knowledge of the mathematical, physical and engineering sciences to such services or creative work

15

as consultation, investigation, evaluation, planning and design of engineering works and systems, planning the use of land and water, engineering studies, and the administration of construction for the purpose of determining compliance with drawings and specifications; any of which embraces such services or work, either public or private, in connection with any engineering project including: utilities, structures, buildings, machines, equipment, processes, work systems, projects, telecommunications, or equipment of a mechanical, electrical, hydraulic, pneumatic or thermal nature, insofar as they involve safeguarding life, health or property, and including such other professional services as may be necessary to the planning, progress and completion of any engineering services. The design of buildings by professional engineers shall be consistent with section 7 of the "Building Design Services Act." [N.J.S.A. 45:4B-7].

[N.J.S.A. 45:8-28(b).]

Moreover, the Building Design Services Act (the "BDSA"), N.J.S.A. 45:4B-1 to -14, recognizes that there is "an area of concurrent practice between the practice of architecture and the practice of engineering, specifically in the area of building design." N.J.S.A. 45:4B-2. Indeed, the BDSA provides that engineers may design certain kinds of buildings and structures. See N.J.S.A. 45:4B-7. The BDSA also provides that both architects and engineers may administer construction "for the purpose of determining compliance with drawings and specifications." N.J.S.A. 45:4B-3h to -3i.

Thus, the statutes governing the practice of architecture and engineering in New Jersey recognize that architects and engineers may both engage in practice that affects building design. These statutes also allow both architects and engineers to engage in construction administration, which is the basis for one of the claims asserted in this case. In addition, some of the claims asserted by plaintiff relate to design elements that may implicate "engineering education."

Therefore, the motion judge should have considered whether some or all of the claims asserted in this case fall within those areas where the practices of architecture and engineering overlap, and whether Tepper and Lyssikatos have the requisite knowledge and experience to offer opinions as to the standards of care that apply to architects in the performance of any such services.

We further note that recently, a panel of this court determined that when a suit claiming malpractice or negligence is brought against a professional listed in N.J.S.A. 2A:53A-26, an affidavit of merit ("AOM") is required from a "like-licensed" professional, except when the claim involves (1) matters of common knowledge; (2) conduct outside the scope of the defendant's professional duties; (3) intentional wrongdoing; or (4) theories of vicarious liability or agency exclusively. Hill

Int'l, Inc. v. Atlantic City Bd. of Educ., __ N.J. Super. __, __ (App. Div. 2014) (slip op. at 35-41).

However, the Hill Int'l case does not apply here because the issue raised in this appeal does not concern the requirements of the AOM statute.[1] Rather, the issue presented concerns the qualifications of witnesses to testify as experts at the trial of a case in which claims of architectural malpractice are asserted. The admissibility of a proposed expert's trial testimony is governed by the standards in N.J.R.E. 702, not the AOM statute.

We therefore reverse the trial court's order barring substantially all of the PCA report. We remand the matter to the trial court for reconsideration of HACBM's motion to strike. On remand, the court should review the specific claims asserted and the standards of care cited in the PCA report for those claims. The court should determine whether Tepper, Lyssikatos, Graczyk, and/or Abramson are qualified to testify at trial as to some or all of the opinions set forth in the report. The court should conduct a N.J.R.E. 104 hearing if the parties' written submissions are insufficient to allow a decision to be made on these issues.

---

[1] As stated previously, plaintiff served an AOM from Abramson, a licensed architect.

III.

We next consider whether the trial court erred by refusing to extend the time for discovery after the motion judge barred substantially all of the PCA report.

Here, the motion to extend discovery was subject to Rule 4:24-1(c), which provides in pertinent part that "[n]o extension of the discovery period may be permitted after . . . [a] trial date is fixed, unless exceptional circumstances are shown."

> In order to extend discovery based upon "exceptional circumstances," the moving party must satisfy four inquiries: (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.
>
> [Rivers v. LSC Partnership, 378 N.J. Super. 68, 79 (App. Div.) (quoting Vitti v. Brown, 359 N.J. Super. 40, 51 (Law Div. 2003)), certif. denied, 185 N.J. 296 (2005).]

In our view, the trial court mistakenly exercised its discretion by refusing to extend the time for discovery. Plaintiff was diligent in pursuing discovery, and served the PCA report in April 2010. HACBM filed a motion to bar that report in November 2010, but did not specifically argue that the report

19

should be barred because it was not authored by an architect. As noted, the court did not rule on the motion at that time because the parties agreed to the dismissal of the complaint without prejudice.

The matter was reinstated and plaintiff filed a new complaint in March 2011. The discovery end date was adjourned several times. Eventually, the court scheduled the matter for trial. HACBM did not move to strike the PCA report until after discovery ended, and for the first time claimed the report should be barred because it had not been written by an architect. As we have determined, the motion judge erred in doing so.

However, even if the judge had correctly decided that most of the PCA report should be barred, the judge's decision, coming literally on the eve of trial, presented an exceptional circumstance that warranted the extension of time for discovery, particularly since HACBM did not move to bar the report and its authors' testimony until after discovery had ended. We conclude that, under the circumstances, the discovery extension should have been granted.

Therefore, on remand, if the court determines that some or all of plaintiff's claims require the report and testimony of a

licensed architect, it should extend the time for discovery to allow plaintiff to serve a new report.

IV.

Plaintiff also argues that the trial judge erred by entering a directed verdict on the claim regarding Stairway No. 2. The trial judge ruled that Abramson could testify as to the analysis in his report, but could not offer an opinion on the standard of care because that opinion was not expressly set forth in the report.

As we have explained, the PCA report states that it was prepared with Abramson's assistance. The report sets forth the basis for plaintiff's claim regarding Stairway No. 2. In essence, plaintiff alleges that HACBM misinterpreted the Rehabilitation Subcode as requiring the reconstruction of the stairway and related structure. The PCA report sets forth the standard of care for the claim, citing several provisions of the Architect's Handbook of Professional Practice, as well as an architect's obligation to comply with applicable building codes.

In his separate report, Abramson detailed the provisions of the Rehabilitation Subcode which he believed applied to the Project. Abramson stated that an analysis of the relevant sections of that Rehabilitation Subcode should have been used to determine whether the existing stairway was adequate. Abramson

opined that, based on this analysis, the demolition and new work on Stairway No. 2 was not necessary. He further opined that the delays and costs associated with that work were unnecessarily incurred.

We are convinced that the trial judge mistakenly failed to consider the relevant section of the PCA report in determining whether Abramson should be permitted to testify as to the standard of care applicable to the claim regarding Stairway No. 2. In our view, the judge should have determined whether Abramson assisted in the preparation of the section of the PCA report pertaining to the Stairway No. 2 claim, and whether the opinions stated therein regarding the standard of care were his opinions.

Moreover, Abramson's separate report concerning Stairway No. 2 provided a sufficient basis to allow him to testify as to the standard of care applicable to this claim. In his report, Abramson stated that HACBM failed to apply the Rehabilitation Subcode correctly, thereby causing the unnecessary demolition and additional work on the stairway. Implicit in that report is the opinion that, by doing so, HACBM deviated from the applicable standard of care for architects. Abramson should not have been precluded from so testifying at trial.

Reversed and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION