**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0883-16T2

FRANCES J. RUSSO, as Executor of
the Estate of ROSEMARY PELLE,

    Plaintiff-Appellant,

v.

IVAN A. FRIEDRICH, M.D.,

    Defendant-Respondent,

and

ENGLEWOOD ENDOSCOPIC
ASSOCIATES, and
FRIEDRICH, RUBIN, PANELLA,
SAPIENZA, & KAPLOUNOV, LLP,

    Defendants.

_____

Argued June 6, 2018 – Decided October 10, 2018

Before Judges Alvarez, Currier, and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-5587-13.

Bruce D. Greenberg argued the cause for appellant (Lite DePalma Greenberg, LLC, attorneys; Bruce D. Greenberg, of counsel and on the briefs; Francis A. Kenny, on the briefs).

Sam Rosenberg argued the cause for respondents (Rosenberg Jacobs & Heller PC, attorneys; Sam Rosenberg, of counsel and on the brief; Pamela C. Castillo, on the brief).

PER CURIAM

Plaintiff Frances J. Russo, the Executor of the Estate of Rosemary Pelle, filed a medical malpractice complaint against defendant Ivan M. Freidrich, M.D., and others. Only Freidrich participates in this appeal. We reverse the jury's verdict, and remand for a new trial.

Drawing from the pertinent portions of the record, we describe the circumstances that led to Pelle's death. She initially consulted with Freidrich, a board certified gastroenterologist, on July 18, 2012. Between that date and February 2013, Freidrich ordered testing to attempt to diagnose Pelle's uncomfortable and painful stomach complaints. The diagnostic procedures included four endoscopies with biopsies. The testing resulted in a diagnosis of (1) a bezoar in August 2012; (2) gall bladder thickening and distension of the stomach in October 2012; (3) improper motility of the abdomen and an ulcer in

December 2012; (4) a gastric outlet obstruction in February 2013; and (5) abdominal ascites in February 2013.[1]

Dissatisfied with the care she was receiving, Pelle obtained a second opinion on February 15, 2013. That physician immediately ordered an endoscopic ultrasound. Performed a week later, it revealed linitis plastica, a form of gastric cancer, in the submucosa of the stomach wall. Pelle's metastatic cancer was at Stage 4.

Pelle received medical treatment, including chemotherapy, from February to December 2013. In December 2013, she passed away after doctors attempted to surgically remove the cancer. The death certificate lists the cause of death as septic shock and metastatic gastric carcinoma. Pelle, who was unmarried and had no children, lived with her parents.

Turning to the litigation, plaintiff's amended complaint alleged the following causes of action: medical malpractice—duty of care (count one); medical malpractice—increased risk (count two); medical malpractice—informed consent (count three); destruction of medical records, N.J.A.C.

---

[1] A bezoar is defined as a "hard indigestible mass of material, such as hair, vegetable fibers, or the seeds and skins of fruits, formed in the alimentary canal." The American Heritage Stedman's Medical Dictionary 96 (2011). Ascites is defined as "[t]he accumulation of serous fluid in the peritoneal cavity." Id. at 68.

13:35-6.5 (count four); medical malpractice—failure to make proper examination (count five); medical malpractice—failure to use proper diagnostic procedures (count six); negligent supervision (count seven); wrongful death, pursuant to the Wrongful Death Act, N.J.S.A. 2A:31-1, and the New Jersey Survivor's Act, N.J.S.A. 2A:15-3 (count eight). Overall, plaintiff alleged that Freidrich's negligence increased the harm to Pelle and was a substantial factor in causing her death.

Five days before trial, couched as a motion in limine, Freidrich moved to dismiss plaintiff's wrongful death cause of action, based on what he asserted was the denial of pecuniary losses in response to his wrongful death interrogatories. Plaintiff argued in opposition, and the court agreed, that she had provided defendant in discovery proof of $10,000 in funeral expenses. The trial judge nonetheless granted the motion the day after jury selection.

The following day, defendants argued that since "there are no damages," plaintiff should not be allowed to claim that Pelle's early death was the result of Freidrich's negligence. There should be a "narrow focus of damages" on pain and suffering. The court agreed: "The pecuniary damages part of the case is out, so the fact that [ ] Pelle died earlier, that is not going to be in the case . . . . [T]he comment that the death was caused by [ ] Freidrich is not in the case."

Plaintiff unsuccessfully pursued leave to appeal the ruling and sought reconsideration of the trial judge's decision.

Trial proceeded on the remaining causes of action. Plaintiff's internal medicine and gastroenterology experts testified that Freidrich deviated from the standard of care by failing to order an endoscopic ultrasound. Plaintiff's experts also testified that had such an ultrasound been ordered in August, September, October, or November 2012, Pelle would have been diagnosed with Stage 1B gastric cancer, which could have been successfully treated by surgical removal of the malignancy.

Freidrich presented a gastroenterology expert, an oncology expert, and David Strayer, an anatomical pathology expert with a subspecialty in gastroenterological pathology. Those experts testified that Freidrich did not deviate from the standard of care, and that Pelle's cancer had already advanced to Stage 4 at the point she consulted with him. Plaintiff repeatedly objected during Strayer's testimony, contending that his responses went beyond his pathology expertise. The trial judge overruled those objections and eventually denied plaintiff's motion to strike his testimony as excessive. The judge observed:

> [Dr. Strayer] was not qualified in oncology, or gastroenterology, . . . a surgeon[,] or as any kind of

radiologist. And I agree that he wasn't, but he did not offer his opinions in those matters in those areas. He talked about studies . . . and his knowledge of general medicine. His testimony was as to his pathology.

The jury found that while Freidrich deviated from the accepted standard of care, the deviation did not increase Pelle's risk of harm. On August 18, 2016, plaintiff filed a motion for a new trial, which was denied.

On appeal, plaintiff raises the following points:

POINT I
THE LAW DIVISION ERRED IN DISMISSING PLAINTIFF'S WRONGFUL DEATH CLAIM ON DEFENDANT'S MOTION IN LIMINE, AND IN DENYING RECONSIDERATION.

POINT II
DEFENSE COUNSEL'S HIGHLY PREJUDICIAL REMARKS IN SUMMATION REQUIRE A NEW TRIAL.

POINT III
THE LAW DIVISION ERRED IN DENYING PLAINTIFF'S MOTION TO STRIKE THE TESTIMONY OF DR. STRAYER.

I.

We first address plaintiff's claim that the trial court's decision to dismiss the wrongful death claim was an error of such magnitude that it made the verdict unjust. It is well-established that in limine motions that are summary judgment motions in disguise have been repeatedly condemned. "Our court rules simply

A-0883-16T2

do not countenance the practice of filing dispositive motions on the eve of or at the time of trial." L.C. v. M.A.J., 451 N.J. Super. 408, 411 (App. Div. 2017); see also Cho v. Trinitas Reg'l Med. Ctr., 443 N.J. Super. 461, 470-74 (App. Div. 2015); Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 83-85 (App. Div. 2001). A motion in limine filed on the eve of trial "is permissible only when it addresses preliminary or evidentiary issues." L.C., 451 N.J. Super. at 411. Even in that instance, those applications are disfavored and should be heard only sparingly. Ibid. (citations omitted). A motion in limine is not a "summary judgment motion that happens to be filed on the eve of trial. When granting a motion will result in the dismissal of a plaintiff's case . . . the motion is subject to rule 4:46, the rule that governs summary judgment motions." Cho, 443 N.J. Super. at 471. The motion must comply with all of the timelines applicable to summary judgment motions. Ibid.

In this case, the record is devoid of any reluctance on the part of the court to entertain the motion. No real explanation was offered, either at trial or on appeal, for the untimely application. In the brief on appeal and at oral argument, Freidrich takes the position that the wrongful death action was properly dismissed because no pecuniary damages were alleged. However, defense counsel and the judge acknowledged plaintiff had asserted $10,000 in funeral

expenses. It is undisputed that Freidrich was on notice of the $10,000 funeral expense, and that the claim for that pecuniary loss was being pursued under the Wrongful Death Act.

We fail to see the distinction between the facts in Cho and this case. First, the timing of the motion was prejudicial. It was a last-minute summary judgment motion in disguise, intended, as plaintiff says, "to cut the legs out from underneath plaintiff at the eleventh hour." Such applications should be the exception and not the rule. In this case, "the rules of court offer[ed] no legitimate path for the consideration of defendant's motions on the day before jury selection." Cho, 443 N.J. Super. at 472. Furthermore, each of the timing requirements imposed by Rule 4:46-1 were violated. See Cho, 443 N.J. Super. at 474.

Granting the motion on the eve of trial devastated plaintiff's cause of action, essentially violating her right to due process precisely as rejected in Cho and cases addressing similar applications. Id. at 474-75. Plaintiff had only hours to respond: "our commitment to the fair administration of justice demands that we protect a litigant's right to proceed to trial when he or she has not been afforded the opportunity to respond to dispositive motions at a meaningful time and in a meaningful manner." Id. at 475.

A-0883-16T2

Granting the motion had particularly damaging consequences here. As a result, the trial judge expanded his ruling and barred plaintiff from presenting any evidence that Freidrich's alleged negligence contributed towards Pelle's death.

Furthermore, it is inexplicable why the trial judge did not consider the funeral bill sufficient for the wrongful death cause of action to survive, since he knew of its existence. If successful on the wrongful death claim, plaintiff may have been entitled to pecuniary damages for loss of contribution, services, companionship, and counsel, as well as hospital, medical, and funeral expenses. The judge cited to no law or fact in support of his decision to dismiss the wrongful death claim despite the funeral expenses.

On the motion for reconsideration, the judge merely said "I have made this decision now two or three times. I don't care if I make it a hundred times. . . . [B]ut for the reasons stated I am going to maintain my decision." He cited cases involving damages for a shortened life in support of his decision. Those cases were inapposite; plaintiff did not frame her causes of action to include that claim. The judge's error in granting the motion in limine was sufficiently egregious to require a new trial.

A-0883-16T2

We also note that in plaintiff's responses to interrogatories, she alleged $1,794,000 in lost earnings. This figure was calculated on Pelle's earnings of approximately $1500 per week, exclusive of raises or employment benefits. Plaintiff did not claim any other loss of income, profit, or earnings, and had no expert on the economic losses.

When asked for more specific answers to interrogatories regarding pecuniary losses generally, plaintiff objected and did not respond, asserting that the information was, among other things, irrelevant. When dismissing the Wrongful Death Act claim, and barring proof that Freidrich's negligence was a substantial factor contributing to Pelle's death, the trial judge reasoned that plaintiff had no means of presenting evidence on loss of future earnings in any event because she needed an expert and had none. An expert, however, is not required to establish loss of future earnings so long as the loss can be demonstrated through other means comprehensible to a jury, such as income tax returns, paystubs, or other financial documentation. See Caldwell v. Haynes, 136 N.J. 422, 437 (1994). Furthermore, an expert is not required even for loss of companionship under the Act. Green v. Bittner, 85 N.J. 1, 4, 15-17 (1980).

A-0883-16T2

## II.

We do not reach plaintiff's argument regarding Freidrich's counsel's comments during summation, as the matter is remanded for a new trial. We briefly address the claims regarding Strayer.

Even the judge agreed with plaintiff's counsel that the expert's testimony exceeded the bounds of his credentials. As the judge said: Strayer was "rambling and rambling" and he had to " get to the point[.] [H]e is talking about everything." The judge added that "[t]here is a line out there and I think he is starting to walk towards the line of going into another area . . . . We are in a fog here . . . . I want to come out of a haze here, and if he is going to stay in the haze, he is going to go right over the side and we are going to have a problem." The judge nonetheless overruled plaintiff's application to strike the testimony.

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015). We accord deference to the trial court's decision on a motion to strike expert testimony, "reviewing it against an abuse of discretion standard." Id. at 52-53 (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011)).

11

Generally, a court may admit expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." N.J.R.E. 702. In addition, N.J.R.E. 702 requires "the witness . . . have sufficient expertise to offer the intended testimony." Landrigan v. Celotex Corp., 127 N.J. 404, 413 (1992). "The test of an expert witness's competency [to testify] in a malpractice action is whether he or she has sufficient knowledge of [the applicable] professional standards to justify [his or her] expression of an opinion." Carey v. Lovett, 132 N.J. 44, 64-65 (1993). "The weight of any such testimony, of course, is for the jury." Id. at 65.

Usually, a witness presented as an expert at trial should be licensed as a member of the defendant's profession. Sanzari v. Rosenfeld, 34 N.J. 128, 136 (1961). However, licensed or even unlicensed individuals involved in another profession can testify as an expert depending on "the claim involved, the specific allegations made, and the opinions that the expert proposes to offer at trial." Garden Howe Urban Renewal Assocs., LLC v. HACBM Architects Eng'rs Planners, LLC, 439 N.J. Super. 446, 456 (App. Div. 2015).

Since the judge appeared to agree Strayer was exceeding the boundaries of his expert qualifications, yet in an abbreviated fashion overruled plaintiff's

12

objection to the testimony without explanation, we are hesitant to comment on the point. The judge's decision may have been justified if he believed Strayer's testimony merely overlapped between practices or disciplines. Any practitioner who is familiar with the situation in dispute and possesses "the requisite training and knowledge [can] express an opinion as an expert." Rosenberg v. Cahill, 99 N.J. 318, 331-32 (1985). In certain cases, we have recognized that "a doctor in one field would be qualified to render an opinion as to the performance of a doctor in another with respect to their common areas of practice." Wacht v. Farooqui, 312 N.J. Super. 184, 187-88 (App. Div. 1998); see also Cahill, 99 N.J. at 331-34; Sanzari, 34 N.J. at 136.

We assume that during the course of any future trial Strayer's testimony will remain within the boundaries of his expertise. While he is a general anatomical pathologist who testified regarding the diagnoses of cancer, he has as subspecialties: hematopathology, gastroenterological pathology, neurological pathology, hematic pathology, and surgical pathology. Thus, he is qualified both to examine tissue and explain the development, spread, and identification of disease. Despite his, at times, broad-ranging testimony, ultimately his explanation was focused on the specific gastric cancer, linitis plastica, and the alleged difficulties in diagnosis because it infiltrates individual cells rather than

A-0883-16T2

forming a mass. At any new trial, his testimony must come within the bounds of his expertise, and he must be qualified in the areas in which he intends to testify. And the judge's ruling on any objection must be clear and explicit enough to allow for appellate review.

Reversed and remanded for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0883-16T2