**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1528-17T4

MANTTIF MANAGEMENT INC.,
d/b/a MANTIFF MANAGEMENT,
INC.,

      Plaintiff-Appellant,

v.

EMERSON DONUTS LLC,
CLIFFSIDE PARK DONUTS, INC.,
and RAJIV MEHTA,

      Defendants/Third-Party
      Plaintiffs-Respondents,

v.

FALGUN DHARIA, LOUIS
ALGIOS, ESQ., and MILLER,
ROSADO & ALGIOS, LLP,

      Third-Party Defendants.

_____

MANTTIF MANAGEMENT INC.,
d/b/a MANTIFF MANAGEMENT,
INC.,

      Plaintiff,

v.

FAIRVIEW DONUTS LLC,
SMITA MODY, and RAJIV
MEHTA,

      Defendants/Third-Party
      Plaintiffs-Respondents,

v.

FALGUN DHARIA, LOUIS
ALGIOS, ESQ. and MILLER,
ROSADO & ALGIOS, LLP,

      Third-Party Defendants.
_____

LOUIS ALGIOS, ESQ. and
MILLER, ROSADO & ALGIOS,
LLP,

      Fourth-Party Plaintiffs,

v.

HARSHAD R. VAIDYA, ESQ.,

      Fourth-Party Defendant.
_____

DUNKIN' DONUTS, LLC,

      Intervenor/Third-Party Plaintiff,

v.

MANTTIF MANAGEMENT INC.,

2

d/b/a MANTIFF MANAGEMENT, INC., and FALGUN DHARIA,

Third-Party Defendants.

_____

Submitted May 7, 2019 – Decided July 5, 2019

Before Judges Fisher and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket Nos. L-020089-14 and L-020092-14.

Christopher Dominick Ferrara, attorney for appellant.

Bendit Weinstock, PA, attorneys for respondents (Sherri Davis Fowler and James F. Keegan, on the brief).

PER CURIAM

Plaintiff Manttif Management Inc. d/b/a Mantiff Management, Inc. (Mantiff) appeals from the dismissal of its remaining claims for recovery on two promissory notes. After a two-day bench trial, the trial court found plaintiff did not prove, by a preponderance of the evidence, there was any money owed to it by defendants Emerson Donuts LLC (Emerson) and Fairview Donuts LLC (Fairview) (collectively defendants). We affirm.

## I.

Third-party defendant Falgun Dharia, who is Mantiff's principal, defendant/third-party plaintiff, Rajiv Mehta, and others were members of GFSV Emerson Donuts Inc. (GFSV), with Dharia serving as the corporate officer. Dharia and Mehta, along with defendant/third-party plaintiff Smita Mody, who was a silent-partner, were also members of SVF Fairview Donuts Inc. (SVF), with Dharia again serving as the corporate officer. GFSV and SVF were the owners of two franchised Dunkin' Donuts stores. Mehta, Emerson, and Fairview purchased Dharia's respective interests in GFSV and SVF in October 2003.

At the closing, defendants executed promissory notes in the amount of $70,000, as to Emerson, and $105,000, as to Fairview. The notes provided for repayment within seven years at an annual interest rate of six percent. In addition to the promissory notes, Mehta tendered advance payments prior to the closing and a lump sum at the closing. Mantiff commenced separate actions as to Emerson and Fairview in 2014 to enforce the promissory notes. In those actions, Mantiff also alleged defendants owed it unpaid consulting fees and profit sharing under a purported retained equity ownership in the franchises.

Mantiff filed amended complaints, defendants filed counterclaims and third-party actions, and a fourth party action between the parties' attorneys at

closing was filed and later settled. Dunkin' Donuts intervened on Mantiff's claims regarding his supposed retained equity in the franchises and the consulting agreements due to a pre-existing settlement agreement wherein Dharia agreed to divest all ownership interests in Dunkin' Donuts franchises. Dharia initially asserted the settlement did not prevent him from providing consulting services or from retaining equity through Mantiff, a corporate entity. Ultimately, Dharia abandoned these claims by stipulating to their dismissal with prejudice.

The actions were consolidated at the trial level and on appeal. They proceeded under the complex litigation track and were assigned to the vicinage's designated complex business litigation judge. Following significant motion practice, the parties engaged in discovery throughout 2015 and produced voluminous documents. In November 2015, Mantiff successfully moved to compel defendants to produce certain additional documents listed in two supplemental notices to produce. Mantiff and Dharia violated discovery orders requiring them to produce specific documents, including a forfeiture order entered in a federal action brought by the government against Dharia.

In April 2016, the parties agreed to participate in private mediation with a retired judge. At that point, the discovery end date (DED) was October 15,

2016. Since the first mediation session was not going to be held until November 28, 2016, the DED was extended, by consent, to December 15, 2016 pursuant to Rule 4:24-1(c). A second mediation session took place on January 13, 2017, however, a complete resolution was not reached.

In a March 9, 2017 letter, counsel for defendants updated the trial court on the status of discovery. After noting the DED was December 14, 2016, counsel advised the court that no party moved for an extension of the DED prior to its expiration, and there were no circumstances warranting a reopening of discovery. Counsel asked the court to schedule the trial of the then three-year-old case. Pertinent to this appeal, counsel's letter included the following "proposed schedule of necessary events prior to trial:" (1) ordering Dharia to produce an unredacted copy of the August 11, 2014 financial statement he submitted to the United States Attorney that he was previously ordered to provide and (2) depositions of expert witnesses, if desired by third party defendant/fourth party plaintiff Louis Algios, Esq.[1] The letter further advised that the DED had been informally extended by consent of the parties, but no

---

[1] Algios represented Dharia with respect to the sale of his interests in GFSV and SVF.

A-1528-17T4

party requested a further extension as the end of the mediation process approached.

Although Mantiff claims it was unable to complete discovery by obtaining additional financial records and completing the deposition of Mehta, it did not move to reopen discovery.

The trial court subsequently issued a March 16, 2017 case management order that stated discovery ended on December 14, 2016; dispositive motions were to be filed by May 26, 2017; pretrial motions were to be filed by September 8, 2017; and trial was scheduled for October 10, 2017.

Dispositive motions followed. On June 23, 2017, the trial court granted summary judgment to Mody, dismissing all claims against her. Subsequent settlement negotiations resolved most of the remaining claims, including the claims against the franchisor, Dunkin' Donuts, and the cross-claims filed by the respective closing attorneys. As part of the partial settlement, Mantiff dismissed its claims under the consulting agreements, and agreed its only remaining claim against defendants was for amounts allegedly owed on the promissory notes.

The trial court conducted a two-day bench trial immediately following the settlement of numerous claims. The only issue to be tried was whether Emerson, Fairview or Mehta owed monies to Mantiff on either of the promissory notes.

7

Dharia and Mehta testified at the trial. Nineteen exhibits were admitted in evidence, including the promissory notes, asset purchase agreement, security agreement, two HUD-1 statements, several checks, two K-1 tax returns, a ledger of Ganesh Management, Inc.,[2] defendants' responses to requests for admissions, an affidavit in support of summary judgment, and several pleadings.

Mantiff claimed a total of $100,100 was paid on account of the two promissory notes. Mantiff relied on the checks and ledger in support of that claim. Mantiff alleged the last payment was received on January 20, 2008. Mantiff alleged the remaining balance owed on the promissory notes was $178,237.69 plus additional interest accruing thereafter at the default rate of sixteen percent per annum. Mantiff also sought an award of attorney's fees and costs pursuant to the terms of the notes. Mantiff disputed any claim by defendants that they were entitled to credits for additional payments or advances prior to closing that were not reflected on the HUD-1 statements or any contract or other writing.

Emerson and Fairview argued Mantiff failed to meet its burden of proof that the notes existed and contended Mantiff was unable to prove what was owed and what was paid on the alleged notes. They asserted the exhibits and Mehta's

---

[2] Mehta is the principal of Ganesh Management, Inc.

A-1528-17T4

testimony established the payments made against the notes and the credits they were entitled to for payments made prior to closing. They also contended Mantiff did not demand payment after the payments stopped in 2003. They alleged the notes were made payable by October 2, 2010; yet Mantiff did not serve a notice of default on Emerson or Fairview until November 27, 2013. The notices did not demand payment or state the outstanding balance. Finally, defendants averred Mantiff did not produce documentation showing it was entitled to enforce the notes.

Following closing arguments the trial court issued an oral decision. It found the promissory notes were entered into as part of the secured asset purchase agreements. The parties introduced extensive documentation concerning the closings but the original notes could not be found. The court characterized the claims as "a simple case of two promissory notes and we come down to credibility, simple credibility."

The court made the following findings. Defendants paid substantial sums to the plaintiff that equaled their obligation under the notes to a large extent. Defendants explained they stopped making payments in 2008 because they advanced large amounts of money for other business ventures that were not paid back. This was known to Mantiff, and ratified by it, as evidenced by the failure

9

to demand satisfaction of the notes. Dharia lacked specific knowledge as to payments made on account of the notes or the consulting agreements because no accounting records were kept. The only accounting records and other tangible evidence about the payments came from the defendant. Dharia offered unsupported opinions in response to mostly leading questions.

The trial court concluded Mantiff:

> failed to prove by a preponderance of the evidence that there is any money due and owing, that all the evidence in this case clearly establishes that any right to assert non-payment on the promissory note was long since waived, that the actions of the parties clearly showed that there was a ratification and acceptance of the discharge of any obligation under those notes, that the claim would have been known and should have been discharged and that the plaintiff himself had no idea what was paid or what wasn't paid under the notes and just merely testified without any records, without any documents, without any business records concerning this payment. He really had no ability to testify at all about any of this. . . . [T]he defendant has proved categorically that . . . the claim was discharged by the duly recorded payments in the check register and the . . . prior to closing payments that were admitted into evidence.

The court entered judgment in favor of defendants and dismissed plaintiff's claims against Emerson and Fairview with prejudice. This appeal followed.

Mantiff raises the following issues: (1) it established a prima facie case for recovery on the notes; (2) the trial court committed reversible error and an

10

abuse of discretion by awarding certain alleged credits or setoffs claimed by Mehta; (3) the trial court committed reversible error in finding it ratified defendants' decision to stop making payments on the promissory notes, and in finding plaintiff never made any demand; (4) the trial court committed reversible error in finding it did not know how much was actually paid on account of the notes because plaintiff failed to keep accounting records; (5) the trial court committed reversible error in finding the parties stipulated there were no further payments due on the notes; (6) the trial court committed reversible error in finding it waived its right to assert any further payment was due; (7) the trial court committed reversible error in finding it discharged, satisfied, or ratified defendants' decision not to make further payments on the notes; (8) the trial court's comments concerning the failure of the parties to adhere to corporate formalities is irrelevant dicta; and (9) the trial court erred in not allowing it to obtain full discovery.

## II.

We first address Mantiff's argument the trial court erred in not allowing it to obtain full discovery. For the following reasons, we are unpersuaded by this argument.

11

This case was assigned to Track IV as a complex commercial action. As a result, it was subject to active case management by the designated judge, with discovery to be completed within 450 days. R. 4:5A-1; R. 4:24-1(a); Civil Case Information Statement, Pressler & Verniero, Current N.J. Court Rules, Appendix XII-B1 to R. 4:5A-1, www.gannlaw.com (2017).[3]

Following a sixty-day consensual extension, the DED was December 14, 2016. The case management order, which reiterated that discovery ended on December 14, 2016, was entered on March 16, 2017, more than three months after the DED. Although Mantiff claims it was unable to complete discovery by obtaining additional financial records and completing Mehta's deposition, it did not move to extend or reopen discovery. Mantiff had more than sufficient time to formally request to reopen discovery before the case management order was entered. Mantiff can hardly complain that discovery was not extended if it did not move for such relief.

The case management order scheduled trial for October 10, 2017. Mantiff could have moved to reopen and extend discovery after the case management order was entered. Had it done so, the motion would have been governed by

---

[3] Subsequent to the trial in this case, our Supreme Court adopted rules governing the Complex Business Litigation Program effective September 1, 2018. Rules 4:102-1 to 4:105-9.

Rule 4:24-1(c), which provides that "[n]o extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown."

To demonstrate exceptional circumstances, we generally require a showing that the attorney diligently pursued the information sought during the discovery period but was frustrated from obtaining the discovery by circumstances largely beyond counsel's control. Bender v. Adelson, 187 N.J. 411, 429 (2006). Specifically, the moving party must show: (1) why discovery was incomplete and the diligence in pursuing discovery; (2) the additional discovery is essential; (3) an explanation for why an extension was not sought within the original discovery period; and (4) the circumstances were beyond the party's and counsel's control. Garden Howe Urban Renewal Assocs., LLC v. HACBM Architects Eng'r Planners, LLC, 439 N.J. Super. 446, 460 (App. Div. 2015).

Mantiff has not demonstrated that such "exceptional circumstances" existed warranting the reopening and extension of discovery. A voluntary decision to postpone discovery pending completion of mediation, without court approval, does not constitute exceptional circumstances beyond the party's and

counsel's control. Thus, Mantiff has not shown a motion to reopen and extend discovery would likely have been granted had it been filed.

In any event, we generally "accord substantial deference to a trial court's disposition of a discovery dispute. We will not ordinarily reverse a trial court's disposition of a discovery dispute 'absent an abuse of discretion or a judge's misunderstanding or misapplication of the law.'" Brugaletta v. Garcia, 234 N.J. 225, 240 (2018) (quoting Capital Health Sys. v. Horizon Healthcare Servs., 230 N.J. 73, 79-80 (2017)). "This deferential approach 'cautions appellate courts not to interfere unless an injustice appears to have been done.'" Quail v. Shop-Rite Supermarkets, Inc., 455 N.J. Super. 118, 133 (App. Div. 2018) (quoting Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 517 (1995)). Mantiff has not demonstrated it suffered an injustice.

III.

We next address Mantiff's attack on the trial court's factual findings and conclusions. Our review of the factual findings made by the trial judge in a non-jury case is limited. Cumberland Farms, Inc. v. N.J. Dep't of Envtl. Prot., 447 N.J. Super. 423, 437 (App. Div. 2016) (citing Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). "Factual findings premised upon evidence admitted in a bench trial 'are binding on appeal when supported by adequate,

14

substantial, credible evidence.'" Potomac Ins. Co. of Illinos ex rel. OneBeacon Ins. v. Pa. Mfrs.' Ass'n Ins., 215 N.J. 409, 421 (2013) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We will "'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Allstate Ins. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015)).

Because a trial court presides over the case and hears the witnesses testify, "it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Cesare, 154 N.J. at 412 (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988)). "[W]e give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Allstate, 228 N.J. at 619 (alteration in original) (quoting Griepenburg, 220 N.J. at 254). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "Thus, '[w]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence.'" Mountain Hill, L.L.C. v. Twp. of Middletown, 399 N.J. Super. 486,

15

498 (App. Div. 2008) (alteration in original) (quoting <u>State v. Barone</u>, 147 N.J. 599, 615 (1997)).  On the other hand, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  <u>Hayes v. Delamotte</u>, 231 N.J. 373, 386-87 (2018) (alteration in original) (quoting <u>Manalapan Realty, L.P. v. Twp. Comm.</u>, 140 N.J. 366, 378 (1995)).

The trial court found, despite the litigation's "long, tortuous" history, the trial involved nothing more than "a simple case of two promissory notes" and the assessment of "simple credibility."  The court had "no doubt" defendants "paid substantial sums to [Mantiff] and those payments equaled their obligation under those notes to a large extent."  The judge further found the evidence was clear Mantiff "had no idea actually what was paid on the notes and what wasn't because" it did not keep "any accounting records."  The only accounting records and the evidence regarding the loan payments came from the defendants.  The court described Dharia as offering net opinions and viewpoints, mostly in response to leading questions, and testified without the benefit of any business records concerning payments.  The court found Dharia "had no idea" whether payments were made on account of the consulting agreements or the promissory

notes. The court concluded Dharia "had no ability to testify" about payments and otherwise found his testimony "was certainly not accurate."

Based on its assessment of Dharia's testimony and demeanor, the trial court determined Dharia "doesn't actually believe" defendants owe Mantiff money and "knew there was nothing due and owing from [defendants]," which explains why it did not pursue its claim for many years. Taking into account "the course of conduct of the parties," the judge found "there was no credible evidence" that demonstrated "anything other than a complete discharge, satisfaction and ratification of the decision of [defendants] to make no further payments." Accordingly, the judge determined Mantiff "failed to prove by a preponderance of the evidence that there was any money due and owing." Although they had no burden of proof, the judge found defendants "had proved categorically" that Mantiff's claim "was discharged by the duly recorded payments in the check register and the . . . prior to closing payments that were admitted into evidence."

Applying our deferential standard of review and considering the proofs as a whole, we hold there was sufficient credible evidence in the record to support the finding that Mantiff failed to prove by a preponderance of the evidence that

there was any money due and owing from Emerson or Fairview on either promissory note.  We discern no basis to disturb the trial court's decision.

In light of our holding, we need not address the trial court's additional rulings that Mantiff waived its right to pursue its claims or ratified defendants' decision to make no further payments.

We have considered Mantiff's other contentions in light of the record and applicable legal principles, and conclude they are without sufficient merit to warrant further discussion in this opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1528-17T4