SABATINO, P.J.A.D.
*121 Plaintiff in this wrongful death and survival action appeals from the trial court's rulings to: (1) exclude from evidence at trial a Certificate of Death issued following an examination by the county deputy medical *350 examiner; (2) deny plaintiff a reopening and extension of discovery to allow the use of the medical examiner's associated report; and (3) grant summary judgment dismissing plaintiff's claims.
On the date of the accident, decedent and plaintiff were shopping at defendant's supermarket. Decedent was using a motorized cart. As she went down a narrow aisle, her cart's basket caught on a cash register station, causing the station to fall on her. The accident injured her leg. Decedent stated she was fine and went home, but four days later she was taken to the hospital with complications. She died the following morning.
After a deputy medical examiner inspected decedent's body, a Certificate of Death was issued. The Certificate stated that the manner of her death was an "accident" and that the cause of death was "complications of blunt trauma of [the] right lower extremity." The examiner's associated report reiterated these conclusions in more detail.
The key legal issue in this appeal is whether the State Medical Examiner Act, N.J.S.A. 52:17B-92, mandates the admission before a civil jury of the Certificate of Death and the hearsay opinions it contained. In addition, we consider whether the hearsay exception for vital statistics, N.J.R.E. 803(c)(9), supplies a sufficient pathway for the Certificate's admissibility. As part of that analysis, we *122 consider whether the "net opinion" doctrine, N.J.R.E. 808 (disallowing the admission of certain disputed complex opinions embedded in otherwise-admissible hearsay records), and case law require the exclusion of the examiner's hearsay opinions. The panel also considers whether the trial court misapplied its discretion in declining to reopen and extend discovery under the circumstances, and whether the court erred in granting summary judgment.
For the reasons that follow, we hold that N.J.S.A. 52:17B-92 does not provide an absolute right to a civil plaintiff to admit the full contents of the Certificate of Death. The hearsay opinions within the Certificate were properly excluded by the trial court under N.J.R.E. 808, the net opinion doctrine, and pertinent case law. We also hold the hearsay exception for vital statistics does not require admission of the examiner's opinions.
Additionally, we conclude the trial court reasonably exercised its discretion in declining to reopen and extend discovery after declaring the Certificate inadmissible. Nor did the court err in granting defendant summary judgment, in light of plaintiff's lack of necessary expert proof of medical causation.
I.
On October 19, 2012, plaintiff William Quail and his wife, decedent Mary Quail ("Mary"),[1] were shopping in Stanhope at the "Shop-Rite of Byram" supermarket. Mary used a motorized shopping cart, but had difficulty maneuvering through the checkout aisle. When the cart's grocery basket caught the edge of a register station, the register station collapsed and fell on Mary's right leg. A cashier asked if Mary was alright or needed help, and Mary responded at the time that she was fine but a little shaken. The cashier called the store manager, who also asked Mary about her condition. According to the manager's written statement, Mary stated at the time that she was fine and not hurt at all.
*351 *123 When Mary returned home, her leg began to swell, but she did not seek immediate medical attention. Four days later, on October 23, Mary was taken to St. Clare's Hospital. She presented with a large hematoma on her right leg. Mary's condition deteriorated rapidly. She was pronounced dead at the hospital at 5:51 a.m. on October 24, 2012.
Generally, when a person dies within twenty-four hours after admission into a hospital, the Morris County Medical Examiner is notified to inspect the body. Accordingly, on October 24, Dr. Carlos A. Fonseca, a forensic pathologist and deputy county medical examiner, externally inspected decedent's refrigerated body and prepared a report. The following day, a Certificate of Death was issued. It stated decedent's manner of death was an "accident," and that the cause of death was "complications of blunt trauma of [the] right lower extremity." The Certificate was issued by the Local Registrar, and bears the sealed signature of the Acting State Registrar of the New Jersey Office of Vital Statistics and Registry.
Dr. Fonseca's associated three-page report amplified the findings noted on the Certificate of Death. The report described decedent as "a morbidly obese, well developed, elderly white female who appears to be the stated age of 68 years." The report included observations about the decedent's condition as to various parts of her body. One of Dr. Fonseca's observations in the report was that:
The right lower extremity reveals mild pitting edema from the knee level down. The right leg reveals extensive swelling of the anterolateral surface due to a 9? x 7? hematoma. Associated with this is purplish/bluish bruising of the back of the leg extending into the popliteal fossa that reveals thickening of the skin. The skin overlying the hematoma is tense and with fluctuation on compression. A large area of epidermolysis measuring 7? x 4? is noted at this level with superficial ulceration of the skin with partial splitting of the dermis and oozing of clear to hemorrhagic fluid. Patchy areas of skin slippage are noted around the margins of the hematoma.
[ (Emphasis added).]
Near the end of the report, Dr. Fonseca opined:
Based on the investigation, medical history, medical records, and external examination, it is my opinion that the deceased died as a consequence of complications of *124 blunt trauma of right lower extremity having as contributory conditions anticoagulation therapy for atrial fibrillation, diabetes mellitus, coronary artery disease, chronic obstructive pulmonary disease, and congestive heart failure. Manner of death is accidental.
[ (Emphasis added).]
Thereafter, plaintiff, as administrator of his late wife's estate and individually, filed a civil action in the Law Division against Shop-Rite[2] and fictitious defendants. He asserts claims under the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, and under the Survivor Act, N.J.S.A. 2A:15-3. Both claims rest upon a theory that decedent's accident was caused by the supermarket's negligence, allegedly causing her leg injury and ultimate death.
*352 Shop-Rite contests liability and resultant damages. With respect to the issues on appeal, its main argument is that plaintiff, who did not retain a medical expert, failed to present sufficient evidence to establish medical causation. Plaintiff counters that such causation is substantiated by the Certificate of Death, a document which Shop-Rite contends is inadmissible hearsay and net opinion.
After discovery ended, Shop-Rite moved to bar admission of the Certificate of Death and also for summary judgment dismissing plaintiff's claims. Following oral argument, Judge Robert M. Hanna barred the findings within the Certificate of Death. He also denied a discovery extension to plaintiff and granted Shop-Rite summary judgment. The judge issued a comprehensive twenty-page statement of reasons explaining his determinations.
At the outset of his written analysis, Judge Hanna found that plaintiff had presented sufficient evidence to support a jury finding that Shop-Rite acted negligently. The judge noted in this regard that Shop-Rite had a duty to ensure that its store aisles *125 were safe for motorized shopping carts. He found that plaintiff had offered ample proof of a breach of that duty, and that such an issue of negligence was within the common knowledge of the jurors.
Nevertheless, the judge ruled that plaintiff would be unable to show proximate cause without expert testimony. Because plaintiff had retained no such medical expert, defendant was entitled to summary judgment as a matter of law.
The judge reasoned that complex medical issues were involved in linking the accident at the store with decedent's demise five days later. The judge recognized that plaintiff had proffered the Certificate of Death as evidence of proximate causation. The judge assumed, for the purposes of his decision, that the Certificate of Death would be potentially admissible at trial under N.J.R.E. 803(c)(9) as a "vital statistic." Even so, the judge found that the Certificate of Death must be excluded for three reasons:
(1) [S]tanding alone, it is a "net opinion" lacking the whys and wherefores on which it is based;
(2) Plaintiff during discovery failed to identify as a witness the Deputy Medical Examiner whose opinion as to cause of death is found in the Certificate of Death and failed to produce the underlying Medical Examiner's report and records providing the basis for that opinion; and
(3) N.J.R.E. 808 requires exclusion in these circumstances, which involve complex medical circumstances and medical causation issues, since the declarant (the Deputy Medical Examiner) whose expert opinion is included in the Certificate of Death was not identified as an expert witness nor were his underlying report and records produced during discovery.
Judge Hanna found it significant that plaintiff had not sought to obtain the medical examiner's file until after the discovery period had already ended. That discovery violation constituted an additional reason to exclude the Certificate of Death. The judge found that plaintiff failed to show due diligence under Rule 4:17-7 or exceptional circumstances under Rule 4:24-1(c) to justify reopening discovery. The judge observed that plaintiff had made a "conscious, strategic decision" to rely on the Certificate of Death alone. Plaintiff had not identified the deputy medical examiner as *126 an expert, nor had he retained an expert, even though those options were available to him during discovery.
Represented by new counsel, plaintiff moved for reconsideration. Judge Hanna *353 denied the motion, issuing a five-page supporting statement of reasons. The judge reiterated that plaintiff "failed to provide the necessary causal link by coming forward with an expert opinion on the element of proximate causation." The judge also repeated his original finding that the Certificate of Death, "as the sole piece of evidence provided on the issue," was inadequate to support plaintiff's burden of proving Shop-Rite's conduct was a substantial cause of decedent's death or injuries.
As another point addressed on reconsideration, the judge rejected plaintiff's argument that the dismissal of his survivorship action, as distinct from his wrongful death claim, was improper. In this regard, the judge noted that plaintiff critically lacked necessary expert opinion proof "establishing the causal link between the Shop[-]Rite incident and [d]ecedent's pain and suffering prior to her death, a link that involve[d] complex medical issues."
This appeal by plaintiff ensued. He principally contests the trial court's evidential rulings concerning the Certificate of Death. He also seeks reversal of the court's denial of a discovery extension and its grant of summary judgment.
II.
The State Medical Examiners Act, N.J.S.A. 52:17B-92, states, in relevant part:
It shall be the duty of the State Medical Examiner, and the county medical examiners, to keep full and complete records in their respective offices, properly indexed, giving the name, if known, of every such person, the place where the body was found, date and cause of death, and all other available information relating thereto.... The records of the office of the State Medical Examiner, and of the county medical examiners, made by themselves or by anyone under their direction or supervision, or transcripts thereof certified by such medical examiner, shall be received as competent evidence in any court in this State of the matters and facts therein contained... The records which shall be admissible as evidence under this section shall be records of the results of views and examinations of or autopsies upon the bodies of deceased persons by such medical examiner, or by anyone under *127 his direct supervision or control, and shall not include statements made by witnesses or other persons.
[ N.J.S.A. 52:17B-92 (emphasis added).]
This current statute repeats similar language dating back as early as 1927, and which stated:
The records of the office of the chief medical examiner made by himself or by anyone under his direction or supervision shall be considered public records, and such records or transcripts thereof certified by the chief medical examiner shall be received as evidence in any court in this State of the matters and facts therein contained. The records which shall be admissible as evidence under this section shall be records of the results of views and examinations of or autopsies upon the bodies of deceased persons by the chief medical examiner or by anyone acting under his direction, supervision or control, and shall not include statements made by witnesses or other persons.
[L. 1927, c. 106, § 6 (emphasis added); see also R.S. 40:21-70 (1937) (superseded by L. 1967, c. 234).]
The 1927 statute, which covered only medical examiners in first-class counties, was supplemented in 1944 with a companion provision that extended to second-class counties. See L. 1944, c. 182, § 10.
*354 According to the legislative history from 1944, this statutory scheme was enacted with a focus on criminal cases. The laws sought to address "considerable apprehension upon the part of the judiciary and the prosecutor concerning proof in homicide cases and the records of the county physician pertaining thereto." Sponsor's Statement to S175 (Mar. 6, 1944) (emphasis added). The 1944 Sponsor added, "This act will also facilitate criminal investigations when the disinterment of a body becomes necessary. It makes the medical records of sudden and violent deaths public records.[3 ] It is a permissive act and a step forward in the conduct of public business." Ibid. (emphasis added).
*128 The 1927 and 1944 statutes were superseded by the adoption of N.J.S.A. 52:17B-92 in 1967, establishing the Office of the State Medical Examiner. L. 1967, c. 234. This successor version of the law retained the language instructing that the medical examiner's records "shall be received as competent evidence in any court...." Ibid.
Notably, the Supreme Court has issued several opinions restricting the breadth of this admissibility provision. For instance, in State v. Reddick, 53 N.J. 66, 67, 248 A.2d 425 (1968), the Court considered whether a medical examiner's autopsy report, relied upon by a testifying expert, would be admissible before a criminal jury. The medical examiner had died before trial. The Court held his report was admissible, because the trial court had "excis[ed] from it all matters of opinion as to the cause of death and other conclusions made by the examining doctor with regard to the place and manner of death." Id. at 68, 248 A.2d 425. The Court cited to the analysis in a New York Court of Appeals opinion, People v. Nisonoff, 293 N.Y. 597, 59 N.E.2d 420, 421 (N.Y. Ct. App. 1944), which similarly redacted the portion of a medical examiner's report containing his opinions. Essentially, the Court ruled that the non-testifying medical examiner's opinions could not be "bootstrapped" into evidence through the report. See Reddick, 53 N.J. at 68-69, 248 A.2d 425.
The Court applied Reddick in a civil context to hold that a non-testifying medical examiner's report or record is admissible only if the examiner's opinion is excised from it. Theer v. Philip Carey Co., 133 N.J. 610, 629-30, 628 A.2d 724 (1993). In Theer, a testifying expert witness based his testimony in part upon the medical examiner's written findings within an autopsy report concerning the "synergistic causal effect of asbestos exposure and cigarette smoking on [the decedent's] fatal lung cancer...." Id. at 630, 628 A.2d 724. Citing its earlier decision in Reddick, the Court ruled that the hearsay opinion of the medical examiner on such a "complex and controversial" subject was inadmissible. Id. at 629-30, 628 A.2d 724. The Court directed that, on retrial, "the erroneous *129 admission of the opinion evidence should not be repeated." Id. at 630, 628 A.2d 724.
Both Reddick and Theer, which remain good law, support the trial court's exclusion of the opinions about decedent's cause of death stated in the Certificate of Death. We recognize those Supreme Court cases do not discuss N.J.S.A. 52:17B-92. Even so, the Court's case law places an important judicial gloss on what otherwise would seem at first blush to be an unqualified direction in the statute that a medical examiner's *355 records "shall be received as competent evidence in any court" and "shall be admissible." N.J.S.A. 52:17B-92. We have been supplied with no legislative history that is contrary to that precedential gloss. If anything, the limited history set forth in the 1944 Sponsor's Statement reflects a concern about impediments to criminal investigations, which is not the context before us.
Unable to distinguish or discredit Reddick and Theer, plaintiff criticizes the trial court's citation to Biro v. Prudential Ins. Co. of Am., 57 N.J. 204, 271 A.2d 1, aff'g dissent, 110 N.J. Super. 391, 402, 265 A.2d 830 (App. Div. 1970). In Biro, the decedent was found slumped over the front seat of his car with the engine running and the garage door closed. Id., 110 N.J. Super. at 403, 265 A.2d 830. The medical examiner examined the body and concluded that the decedent had committed suicide. 110 N.J. Super. at 399, 265 A.2d 830. His opinion was reflected on the Certificate of Death, in which the suicide block was marked with an "X" above the words "to the best of my knowledge." Id. at 395-96, 265 A.2d 830. The Appellate Division majority concluded that the document was admissible because the medical examiner was proffered to testify about his opinions before the jury. Id. at 399, 265 A.2d 830. However, applying Reddick, the majority cautioned that if the medical examiner did not testify, then his opinions in the death certificate would need to be excised. Ibid.
In his dissenting opinion in Biro, which was later adopted by the Supreme Court, 57 N.J. at 204, 271 A.2d 1, Judge Matthews concluded that the medical examiner's opinions should have been *130 excluded, because the examiner had "no special competence" to ascertain the decedent's state of mind when opining that the death was suicidal. 110 N.J. Super. at 406, 265 A.2d 830. Judge Matthews also distinguished between "facts" reflected on a death certificate, which are admissible, versus "conclusions" or opinions, which are not. Id. at 405-06, 265 A.2d 830.
Biro does not aid plaintiff's argument for admissibility here. The Certificate of Death here noted the cause of death was an "accident," which was plainly a subjective opinion and not a "fact." Judge Matthews did acknowledge that, had the medical examiner testified, his opinions within his area of specialized knowledge (such as whether the death was caused by carbon monoxide and alcohol poisoning ), would be admissible, but not his opinions about suicide. Id. at 405-06, 265 A.2d 830. Here, however, plaintiff was attempting to present those opinions through the death certificate itself. Moreover, Biro was decided before the adoption of the restrictions set forth in N.J.R.E. 808 on hearsay expert opinion, which we discuss, infra.
Nor is Pearson v. St. Paul, 220 N.J. Super. 110, 531 A.2d 744 (App. Div. 1987), another case cited by plaintiff, dispositive. In Pearson, we held the report of an anesthesiologist, who had been consulted by a medical examiner in certifying the decedent's cause of death, was admissible in a medical malpractice case. Id. at 118-19, 531 A.2d 744. In Pearson, the medical examiner testified and explained why he had relied upon the consulting anesthesiologist's findings in reaching his final conclusions. Id. at 118, 531 A.2d 744. Here, there was no effort before discovery closed to proffer testimony from the medical examiner. In addition, Pearson also preceded the adoption of N.J.R.E. 808.
There are two other compelling reasons for upholding the exclusion of the Certificate of Death in this case: the special hearsay restrictions in N.J.R.E. 808, and the "net opinion" doctrine.
N.J.R.E. 808 was adopted in 1992. The rule codifies the Supreme Court's opinion *356 in *131 State v. Matulewicz, 101 N.J. 27, 30-33, 499 A.2d 1363 (1985), adopting restrictions upon the admission at trial of complex disputed expert opinions that appear within an otherwise-admissible hearsay record. Supreme Court Committee Comment to N.J.R.E. 808 (1991); Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 808 (2018). In essence, the Rule functions as a barrier to hearsay expert opinions that may be untrustworthy, and which the opposing party has no opportunity to impeach through cross-examination of the declarant. The Rule directs as follows:
Expert opinion which is included in an admissible hearsay statement shall be excluded if the declarant has not been produced as a witness unless the trial judge finds that the circumstances involved in rendering the opinion, including the motive, duty, and interest of the declarant, whether litigation was contemplated by the declarant, the complexity of the subject matter, and the likelihood of accuracy of the opinion, tend to establish its trustworthiness.
[ N.J.R.E. 808 (emphasis added).]
Notably, the adoption of Rule 808 post-dated the enactment of N.J.S.A. 52:17B-92.
Case law applying Rule 808 has repeatedly enforced the Rule's prohibition of the admission of complex expert opinions contained in hearsay documents, where there are disputed issues concerning the trustworthiness of those opinions. See, e.g., James v. Ruiz, 440 N.J. Super. 45, 62, 111 A.3d 123 (App. Div. 2015) (radiologist's hearsay opinion finding a disc bulge); N.J. Div. of Youth and Family Servs. v. M.G., 427 N.J. Super. 154, 173-75, 47 A.3d 764 (App. Div. 2012) (psychologist's hearsay assessment of psychological and bonding evaluations); Brun v. Cardoso, 390 N.J. Super. 409, 421, 915 A.2d 1053 (App. Div. 2006) (hearsay interpretation of MRI of spine); Nowacki v. Cmty. Med. Ctr., 279 N.J. Super. 276, 281-83, 652 A.2d 758 (App. Div. 1995) (radiologist's hearsay opinion within a hospital record addressing whether patient's fractures were "pathologic" or "non-traumatic"). Recently, the Supreme Court endorsed and applied James and the strict enforcement of Rule 808 in Hayes v. Delamotte, 231 N.J. 373, 392-93, 175 A.3d 953 (2018) (hearsay opinion by non-testifying doctor concerning plaintiff's spinal problems).
*132 As the motion judge recognized, the Certificate of Death on its face qualifies as an admissible hearsay record as a "vital statistic" under N.J.R.E. 803(c)(9). Indeed, the Certificate was duly filed with the State Office of Vital Statistics, and bears the seal of that office. However, that does not end the analysis under Rule 808, which can bar expert opinion "included in an [otherwise] admissible hearsay statement." N.J.R.E. 808.
Taking the necessary analysis under Rule 808 to the next step, it is manifest that the terse finding within the Certificate reciting a cause of death is the very sort of disputed opinion on a complex subject that should not be admitted without the opportunity to cross-examine the author. In this fashion, the principles of Rule 808 fortify the mandates of Reddick and Theer to exclude the portion of a death certificate that contains subjective opinions from a non-testifying medical examiner.
As the motion judge also rightly found, a separate reason for excluding the Certificate of Death is the net opinion doctrine. The doctrine barring the admission at trial of net opinions is a "corollary of [ N.J.R.E. 703 ] ... which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data."
*357 Townsend v. Pierre, 221 N.J. 36, 53-54, 110 A.3d 52 (2015) (alterations in original) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583, 960 A.2d 375 (2008) ). The net opinion principle mandates that experts "give the why and wherefore" supporting their opinions, "rather than ... mere conclusion[s]." Id. at 54, 110 A.3d 52 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144, 77 A.3d 1161 (2013) ).
The "whys and wherefores" supporting the death certificate's opinions about decedent's cause of death are clearly absent from the document. One cannot tell from the document how the medical examiner reached the conclusion that the cause of death was accidental, or how the mechanism of injury to plaintiff's leg at the store produced her unfortunate demise five days later. The document is a classic "net opinion" that must not be allowed in the *133 absence of testimony by the author elaborating the basis for the conclusions reached.
For these many reasons, the trial court correctly barred the admission of the Certificate of Death. We affirm that determination.
III.
We turn to plaintiff's argument that the trial court unfairly precluded him from reopening discovery and seeking to use the medical examiner's narrative report as alternative or additional evidence of the cause of death.
Our scope of review of this procedural ruling is a narrow one. A trial court's decision about whether to extend a period of discovery is reviewed for abuse of discretion. Leitner v. Toms River Reg'l Sch., 392 N.J. Super. 80, 87, 919 A.2d 899 (App. Div. 2007). Similarly, when reviewing the propriety of a trial court's dismissal of a plaintiff's complaint with prejudice because of discovery violations, this court considers only whether the court abused its discretion. Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 517, 655 A.2d 1368 (1995). This deferential approach "cautions appellate courts not to interfere unless an injustice appears to have been done." Ibid. (citations omitted); see also Cavallaro v. Jamco Prop. Mgmt., 334 N.J. Super. 557, 570-72, 760 A.2d 353 (App. Div. 2000).
Having fully considered the chronology of events, we are satisfied the trial court did not misapply its discretion in declining to let plaintiff to reopen discovery and belatedly rely upon the medical examiner's narrative report to support his claims of medical causation. Plaintiff did not move to extend discovery prior to the setting of the trial date. Plaintiff could not have reasonably expected in light of the precedent in Reddick and Theer, to rely on the Certificate of Death as his sole medical proof of causation. The court justifiably determined that plaintiff had not demonstrated *134 "exceptional circumstances" to justify an extension of discovery under Rule 4:24-1(c).
Nor did the court act arbitrarily or unfairly in disallowing plaintiff's effort to amend his interrogatory answers under Rule 4:17-7 in order to rely on the medical examiner's narrative. Plaintiff and his former counsel had access to the Certificate of Death early on in the case. During the course of discovery, they did not attempt to procure the medical examiner's report or retain an expert. Plaintiff obtained the medical examiner's narrative only after discovery had ended and defendant already had moved for summary judgment.
Even if the trial court, in its discretion, had granted plaintiff the opportunity to extend discovery and amend his interrogatory answers to include the medical examiner's narrative report, that would not *358 have overcome the critical hearsay problem we have already discussed in Part II. The narrative report is filled with opinions and conclusions, which are barred under Reddick, Theer, and N.J.R.E. 808, in the absence of testimony from the examiner himself. There is no indication in the present record that this county official is willing to testify as an expert at trial for plaintiff. The record is bereft of any attempt, as of the time of the motion practice, to proffer the medical examiner as a trial expert witness for plaintiff. Hence, an extension of discovery to include the bare report likely would have been futile.
IV.
Lastly, we consider the trial court's entry of summary judgment in Shop-Rite's favor, given the state of the record. In doing so, we apply the familiar principle that, on a motion for summary judgment, the court must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995) ; see also R. 4:46-2(c). Appellate *135 review of an order granting summary judgment observes the same standards, including this court's obligation to view the record in a light most favorable to the non-moving parties. See IE Test, LLC v. Carroll, 226 N.J. 166, 184, 140 A.3d 1268 (2016) (citing Brill, 142 N.J. at 540, 666 A.2d 146 ).
A critical legal component of plaintiff's wrongful death and survivorship claims is establishing that the incident in the supermarket proximately caused decedent's medical complications and her ultimate death. See Model Jury Charges (Civil), 6.13, "Proximate Cause-Where There is Claim that Concurrent Causes of Harm are Present and Claim that Specific Harm was not Foreseeable" (1998). See also Townsend, 221 N.J. at 51, 110 A.3d 52.
Judge Hanna found that plaintiff needed expert opinion to prove proximate cause in this case because the chain of proximate cause-connecting the impact on decedent's right leg from the store incident, to her medical complications at home that caused her to go to the hospital, to her death five days later-all entailed complex medical issues beyond the ken of an average juror. To evaluate how this accident injuring the decedent's right leg could have been a substantial factor in her death over the course of a few days involves a highly technical assessment of not only the foot injury but also the interaction of decedent's underlying medical problems and medications. The topic is plainly outside the common knowledge of the average juror. 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 490, 640 A.2d 346 (App. Div. 1994) (holding that expert testimony is necessary where proximate causation cannot be established through common knowledge).
Plaintiff needed a medical expert to address these key issues of medical causation, but did not retain one. This critical shortcoming pertains as to both the wrongful death claim and the survival claim. To be sure, we recognize that it is plausible from the known facts to infer that decedent sustained a harsh blow to her right leg. But that lay inference is simply not enough to get the complex issues of medical causation before a jury.
*136 Even viewing the record in a light most favorable to plaintiff, we concur with the trial court that summary judgment was appropriate in favor of Shop-Rite.
Affirmed.

We use decedent's first name in this narrative to distinguish her from her husband. In doing so, we intend no disrespect.

The caption identifies the non-fictitious defendants as "Shop-Rite Supermarkets, Inc., Shop-Rite of Stanhope, New Jersey, Shop-Rite of Byram Township, New Jersey, and Ronetco D/B/A Shoprite of Byram, NJ # 203." We collectively refer to them as "Shop-Rite." The fictitiously named defendants were never identified, nor substituted into the case.

The ensuing passage of medical privacy legislation such as the Health Insurance Accountability and Portability Act ("HIPAA"), 29 U.S.C. § 1181 to 1183, 42 U.S.C. § 300gg, and 42 U.S.C. § 1320d to -9, has apparently eclipsed this secondary purpose of public disclosure. See, e.g., 45 C.F.R. 160.103 (declaring that a person's private health information is no longer protected under HIPAA fifty years after death).