**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1737-16T4

MARTIAL BRISMA and
ALBERTE MILORD,

    Plaintiffs-Appellants,

v.

RENEL LOUIS, LAX
RECORDS CARIBBEAN
MUSIC AND MOVIES
STORE,

    Defendants,

and

PARAMOUNT PROPERTY
MANAGEMENT, INC., NEW
VISTAS CORPORATION and
COLLIERS INTERNATIONAL,

    Defendants/Third Party
    Plaintiffs-Respondents,

v.

JAMES MOREAU,

    Third-Party Defendant.

_____

Submitted January 8, 2019 – Decided January 31, 2019

Before Judges Fisher and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. L-2709-14.

John W. King, attorney for appellants.

Law Office of Steven J. Tegrar, attorneys for respondents (George H. Sly, Jr., on the brief).

PER CURIAM

Plaintiffs Martial Brisma and Alberte Milord, his wife, appeal from Law Division orders denying an extension of discovery, barring additional expert reports, denying reconsideration, denying a motion to compel a corporate representative to appear for deposition, and granting summary judgment to defendants Paramount Property Management, Inc., Colliers International, and New Vistas Corporation (collectively defendants). Because we agree these orders were properly granted, we affirm.

This matter arises from an armed robbery of Brisma and ten others on Sunday, April 7, 2013, at approximately 11:00 p.m. in a restaurant under construction. The restaurant and an adjoining record store known as LAX Records Caribbean Music and Movies Store were located in a mixed use building in Elizabeth. When the incident occurred, the storefront to the right of LAX Records was under construction to become a restaurant. The restaurant

2 A-1737-16T4

was not yet open for business. LAX Records did not have regular hours on Sunday and was closed at the time of the robbery.

Renel Louis, the owner and operator of LAX Records, leased the property where the robbery occurred from Paramount. The lease provided the premises could only be used as a retail store for the sale of records, and for no other purpose unless approved in writing by the landlord. The leased premises are in a two-story building containing multiple ground level stores in a row that front a street. The second floor is occupied by residential tenants. The property does not include a parking lot.

Both stores feature magnetized entrance doorways rigged to a buzzer system Louis installed for security.[1] A heavy magnet keeps the door closed. There is an exterior buzzer used to signal whoever is inside to let somebody in. The magnet is controlled by an interior buzzer that must be depressed to allow entry or exit. In addition, the adjoining storefronts are connected by a doorway that allows a person to cross over between stores.

Louis went to the store on Sundays to "hang out in there" with his friends. On the night of the incident, Louis and about eleven of his friends met at the store; they planned to hang out before going to a midnight party down the street

---

[1] At his deposition, Louis explained he installed the lock system for maximum safety because of the area, since he was sometimes in the store by himself.

A-1737-16T4

at Club Envy. As the events unfolded, Brisma and his friends were inside the restaurant watching television and playing cards and dominoes for money. While doing so, two gunmen entered the restaurant from the record store side of the building, locked the door behind them, ordered everyone on the ground, and robbed them of a small amount of money. Brisma was shot twice during the robbery. One of the bullets is still lodged in his body.

In a recorded statement to police four days after the robbery, Brisma gave the following account of the incident:

> There were two men that walked in. Once they went in to the store one of them locked the door so no one else could come in. The two men were demanding money and they were telling everyone to empty their pockets. One of the men began hitting a couple of the other guys with the handle of the gun. At one point one of the men approached me and started hitting me with the gun and in my face. I turned and tried to run and I got shot in the back and I fell to the ground. He thought I was dead, after a couple minutes I was able to crawl to the front door. I went out the front door and fell to the sidewalk. I was able to crawl to my car which was parked right in front and I stayed there until a vehicle came by and a man asked me if I was okay. I told him I got shot and he called the police.

When asked how the gunmen circumvented the buzzer security system, Louis stated, "I don't know." The record does not disclose how the gunmen gained entry. Following a police investigation, third-party defendant James

A-1737-16T4

Moreau was identified as the shooter, prosecuted, convicted of the robbery, and sentenced to prison.

On July 30, 2014, plaintiffs filed suit against defendants Louis and LAX Records alleging they breached their duty to secure all entrances and exits and protect patrons and customers from unauthorized entry by gunmen, proximately injuring Brisma and causing Milford to suffer loss of consortium. On January 7, 2015, plaintiffs filed a first amended complaint naming Paramount and New Vistas as additional defendants. On July 20, 2015, plaintiffs filed a second amended complaint naming Colliers as an additional defendant. Paramount, New Vistas, and Colliers filed a third-party complaint against Moreau for contribution and indemnification.

On September 18, 2015, plaintiffs' original counsel was relieved due to a conflict of interest. Plaintiffs' successor counsel filed a substitution of attorney on December 21, 2015. In the midst of plaintiffs' substitution of counsel, defense counsel fell ill. She died on January 6, 2016.

The initial discovery end date was December 4, 2015. By consent, discovery was extended until February 2, 2016, pursuant to Rule 4:24-1(c). On January 22, 2016, Judge Thomas J. Walsh granted defendants' motion, extending a second time discovery until April 2, 2016 and setting an arbitration date of April 21, 2016. On February 17, 2016, Judge Walsh entered a consent order

extending discovery a third time until June 30, 2016 based on plaintiffs' counsel's recent substitution and personal injury, and defense counsel's untimely death. The order did not set a new arbitration date.

Defendants moved to extend discovery a fourth time until August 30, 2016, based on substitution of new defense counsel two weeks earlier. On April 15, 2016, Judge Kenneth J. Grispin granted the motion for exceptional circumstances, set a new arbitration date of September 8, 2016, required depositions of parties and witnesses to be completed by May 15, 2016, and required service of plaintiffs' expert reports by June 25, 2016.

Plaintiffs did not move to further extend discovery or the June 25, 2016 deadline for serving an expert report. On July 1, 2016, defendants moved to compel Brisma to attend an independent medical examination (IME) after he failed to appear for a previously scheduled IME and to bar plaintiffs' expert reports as out of time. Only two days before the return date, plaintiffs filed untimely opposing papers and a cross-motion to extend discovery a fifth time by ninety days. On July 22, 2016, Judge Walsh granted defendants' motion as unopposed,[2] ordering Brisma to attend an IME on August 10, 2016 and barring plaintiffs from serving expert reports. The same day, Judge Walsh denied

---

[2] Judge Walsh did not receive the opposing papers before granting defendants' motion as unopposed.

plaintiffs' cross-motion to extend discovery, noting Judge Grispin's April 15, 2016 order extending discovery for exceptional circumstances stated no further extensions would be granted.

Plaintiffs moved for reconsideration of the bar on expert reports. On September 16, 2016, Judge Walsh denied reconsideration. Plaintiffs' motion for leave to appeal the July 22 and September 16, 2016 orders was denied on November 17, 2016.

Meanwhile, defendants moved for summary judgment. On November 18, 2016, Judge Walsh granted summary judgment to defendants, dismissing all claims and cross-claims against them with prejudice. This appeal followed.

In the interim, default was entered against co-defendants Louis and Lax Records. On April 21, 2017, the trial court conducted a proof hearing and entered default judgment against them in the amount of $184,458.99.

As to the orders pertaining to discovery, plaintiffs argue the trial court erred by: (1) barring plaintiffs' expert report by not considering the unique factual circumstances surrounding the missed deadline for submission of the report; (2) not further extending discovery for exceptional circumstances by applying the wrong standard and relying on erroneous facts and deadlines; (3) denying reconsideration when it did not consider plaintiffs' out-of-time opposing papers to the underlying motion despite receiving them prior to the

return date and the submission of a reply brief by the moving defendants; and (4) not compelling the deposition of defendants despite an agreement between the parties.

Plaintiffs further argued the trial court erred by granting summary judgment to defendants because: (1) there are genuine issues of triable fact; (2) defendants breached a duty of care owed to plaintiffs by taking no reasonable measures in a high crime area and where illegal gambling activity was taking place on a regular basis; and (3) expert testimony was not required in a factually simple case in which the common knowledge doctrine applied.

We first address the orders relating to the extension of discovery deadlines and barring the testimony of plaintiffs' expert. "[W]e apply an abuse of discretion standard to decisions made by . . . trial courts relating to matters of discovery." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (citing Bender v. Adelson, 187 N.J. 411, 428 (2006)). "As it relates to extensions of time for discovery, appellate courts . . . have likewise generally applied a deferential standard in reviewing the decisions of trial courts." Ibid. Ordinarily, "we decline to interfere with discretionary rulings involving discovery unless it appears that an injustice has been done." Cunningham v. Rummel, 223 N.J. Super. 15, 19 (App. Div. 1988).

Plaintiffs' second application, which sought a fifth extension of discovery, was filed on July 20, 2016, more than three months after the April 15, 2016 order scheduled an arbitration date. Therefore, plaintiffs' motion was governed by Rule 4:24-1(c), which provides that "[n]o extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown."

To demonstrate exceptional circumstances, we generally require a showing that the attorney diligently pursued the information sought during the discovery period but was frustrated from obtaining the discovery by circumstances largely beyond counsel's control. Bender, 187 N.J. at 429. Specifically, the moving party must show: (1) why discovery was incomplete and the diligence in pursuing discovery; (2) the additional discovery is essential; (3) an explanation for why an extension was not sought within the original discovery period; and (4) the circumstances were beyond the party's and counsel's control. Garden Howe Urban Renewal Assocs., LLC v. HACBM Architects Eng'r Planners, LLC, 439 N.J. Super. 446, 460 (App. Div. 2015).

Because an arbitration date had already been set, plaintiffs were required to demonstrate "exceptional circumstances." The motion judge denied the motion, finding plaintiffs had not demonstrated exceptional circumstances justifying a further extension of discovery, including the deadline for serving

expert reports. We agree. Plaintiffs did not demonstrate diligence in pursuing discovery or obtaining an expert. Nor did plaintiffs explain how the circumstances necessitating a further discovery extension were beyond counsel's control. Thus, denial of a fifth extension of discovery and barring plaintiffs' expert report was not an abuse of discretion.

Turning to plaintiffs' argument that the judge erred in denying their motion for reconsideration, we review for an abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). A motion for reconsideration of an order must "state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." R. 4:49-2.

Reconsideration should not be sought "merely because of dissatisfaction with a decision." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990).

> Reconsideration should be utilized only for those cases which fall within that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid.]

In addition, "[r]econsideration cannot be used to expand the record and reargue a motion. Reconsideration is only to point out 'the matters or controlling

A-1737-16T4

decisions which counsel believes the court has overlooked or as to which it has erred.'" Capital Fin. Co. of Delaware Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting R. 4:49-2).

On reconsideration, plaintiffs requested the judge consider the arguments raised in their untimely opposition to the original motion. Plaintiffs' opposing papers were submitted so late they did not reach the motion judge before the return date. Judge Walsh noted it is inappropriate for the court to consider arguments on reconsideration that should have been raised in opposing papers submitted in a timely fashion so as to reach the court before the original motion was decided. We discern no abuse of discretion.

Finally, we address plaintiffs' argument that the trial court erred by granting summary judgment to defendants. We review the grant of summary judgment de novo, applying the same standard used by the trial court, which:

> mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
>
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

11

We also determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We owe no deference to the trial court's legal analysis or interpretation of a statute. The Palisades At Ft. Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009)).

We affirm the grant of summary judgment to defendants substantially for the reasons expressed by Judge Walsh in his cogent opinion from the bench on November 18, 2016. We add the following comments.

In order to prevail in an action based on premises liability, "a plaintiff must establish four elements: (1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." Fernandes v. DAR Dev. Corp., Inc., 222 N.J. 390, 403-04 (2015) (citing Townsend v. Pierre, 221 N.J. 36, 51 (2015)). In some cases, expert testimony may be required to allow a jury to causally connect a particular injury of a plaintiff to a breach by a defendant when the question involves complexities

beyond the ken of an average juror. Quail v. Shop-Rite Supermarkets, Inc., 455 N.J. Super. 118, 135 (App. Div. 2018).

The owner or operator of a store or restaurant owes a duty of reasonable care to its customers and patrons who are legally on its premises to provide a reasonably safe place to shop or have dinner. Butler v. Acme Food Markets, Inc., 89 N.J. 270, 275, 280-81 (1982). This duty does not make store or restaurant owners or operators guarantors of a customer or patron's safety; however, if criminal activity is reasonable foreseeable, the store or restaurant has a duty to take reasonable steps to protect its customers and patrons from that danger. Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100, 121 (2005); see also Clohesy v. Food Circus Supermarkets, 149 N.J. 496, 502-05 (1997); Butler, 89 N.J. at 276, 280-81; Trentacost v. Brussel, 82 N.J. 214, 223 (1980).

Typically, this duty cannot be disclaimed, but when the relationship between a defendant and a plaintiff is unclear, a court must consider foreseeability, fairness, and the public interest in determining whether imposition of a duty of care is appropriate. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993). However, in cases involving third-party violence and a commercial defendant, the focus is "primarily on foreseeability." Clohesy, 149 N.J. at 505. To determine foreseeability, courts should employ a totality of

13

the circumstances test, which may or may not include prior incidents of criminal activity on or near the property.  Id. at 507-08.

At oral argument before the motion judge, plaintiffs asserted it was "clear" that expert testimony on the issue of constructive notice was not required. Plaintiffs contend the motion judge erred because expert testimony was not required.  On the contrary, Judge Walsh agreed that expert testimony was not required in a premises security case.  However, he cautioned there must be "enough material facts" for "a reasonable jury" to find negligent lack of security "based on just the facts of the case without [] expert testimony."

The judge recognized "foreseeability can stem from prior criminal acts that are lesser in degree than the one committed against the plaintiff," whether occurring at the rental premises or in close proximity thereto.  The judge found there was insufficient evidence for a jury to do anything other than "speculate" as to the landlord's liability, noting the robbery happened late at night while Brisma and the others were playing cards, an activity "other than the intended use of the business, which is a record store."

The judge concluded there was "no credible evidence on the record to suggest that there was any sort of nefarious activity going on at the time that this shooting took place or that the landlord had any knowledge of any illegal activity that was taking place on the premises."  While plaintiffs provided police reports

14

of police calls to the area, the reports were provided after discovery had ended. More importantly, the reports did not show "pervasive, criminal activity that this landlord should have been aware of such that they should have taken additional precautions inside the record store." Additionally, the robbery took place inside the store. The landlords "had no conceivable knowledge that anything untoward was going on" inside the store. Under the terms of the lease, the interior of the store was controlled by the tenant, not the landlords. Considering the totality of these circumstances, the judge concluded that there were insufficient material facts for the landlord and the building owner to be liable.

The building where the robbery occurred does not have a parking lot or parking facilities for customers. Under the terms of the lease, the retail space rented to LAX Records was to be used only as a record shop. Paramount did not have control over the interior of the space rented for LAX Records or the restaurant under construction. Instead, Paramount only controlled the exterior of the building. The robbery and shooting did not occur outside of the building leased by Paramount to Louis. Nor did it occur in a public place. It occurred in a restaurant under construction that was not yet open to the public. The adjacent LAX Records, through which the robbers may have gained access to the restaurant space, was not open for business at the time of the robbery. It was

secured by magnetized entrance doorways rigged to an interior buzzer that must be depressed to allow entry or exit.

None of the persons inside LAX Records or the restaurant space were there as customers or patrons; nor were they business invitees. There is no evidence Louis charged admission or any fees to participate in the card playing or dominoes. At most, they were social guests who were there to recreate with friends before leaving to hear live music at another location.

The record contains no evidence of any prior robberies of customers while inside LAX Records or as they attempted to enter or leave the store. The robbery occurred late at night when the store was not open. We are unaware of any precedent in this State extending liability to a landlord for failure to provide adequate security to social guests of a commercial tenant who were inside a rented retail space during hours the tenant's store was not open for business.

These facts are readily distinguishable from the cases relied upon by plaintiffs in which liability has been found due to failure to provide adequate security to patrons of stores that are open for business while those patrons are in common areas such as parking lots, at locations where there had been prior robberies. We decline to expand the commercial landlord's duties to provide greater security through the installation of security cameras or other methods under the facts of this case.

We are unable to discern any basis for liability of Colliers and New Vistas as there is no indication in the record that they are owners, landlords, property managers, or tenants of the property where the robbery and shooting occurred.

Plaintiffs' remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1737-16T4