**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5734-17T3

HOLLY HUGHES,

    Plaintiff-Appellant,

v.

ESTATE OF LEONARD J.
OWEN BY CAROL A. OWEN,
EXECUTRIX,

    Defendant-Respondent.

_____

        Submitted March 19, 2019 – Decided April 9, 2019

        Before Judges Fisher and Geiger.

        On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0741-16.

        Larrimore & Farnish, LLP, attorneys for appellant (Thomas S. Farnish, on the briefs).

        Law Offices of William E. Staehle, attorneys for respondent (Suzanne D. Montgomery, on the brief).

PER CURIAM

Plaintiff Holly Hughes appeals from a Law Division order barring plaintiff's liability expert from testifying at trial and granting summary judgment to defendant Estate of Leonard J. Owen by Carol A. Owen, Executrix in this premises liability action. We reverse and remand for trial.

I.

Because this is an appeal from a summary judgment granted to defendant, our recitation of the facts is derived from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff, and giving plaintiff the benefit of all favorable inferences. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013). Plaintiff is a Certified Nursing Assistant. Defendant Leonard J. Owen (decedent) resided in a house he owned in Hamilton Township. On February 7, 2015, plaintiff was hired by decedent's daughter to provide nursing care to decedent in his home. She commenced work that same day. Plaintiff arrived in day light; when she left work it was dark. After exiting the house she proceeded down a walkway leading to a public sidewalk. As she did so, she tripped and fell onto the sidewalk, causing a fractured right elbow and injured knee. Plaintiff subsequently underwent a right elbow radial head replacement.

A-5734-17T3

The walkway was unlit and dark at the time of the accident. As plaintiff neared the end of the walkway, she did not see a three and one-half-inch drop off. She testified at deposition that her fall occurred just as she reached the drop off where the walkway meets the sidewalk. There were no objects or substances on the walkway or sidewalk. The fall was not weather related.

Decedent relies on the following colloquy during plaintiff's deposition to show plaintiff does not know what caused her to fall:

> Question: Do you have any recollection of stepping from the walkway onto the sidewalk?
>
> Answer: No.
>
> Question: . . . What is your last sensation or recollection before you fell?
>
> Answer: Before the fall?
>
> Question: Yes.
>
> Answer: I had no sensation. I was walking.
>
> Question: And you are walking and what happens next?
>
> Answer: I fell.
>
> Question: At any time before you fell, did you slip or slide at all?
>
> Answer: No.
>
> Question: Did you trip over something?

3

Answer: No.

Question: At any time before you fell, do you have a recollection of stepping down from the walkway onto the sidewalk?

Answer: No.

Question: So as you sit here today, you don't know whether you had stepped from the walkway onto the sidewalk prior to your fall?

Answer: No.

Question: Do you have any recollection of your foot or leg giving out at any time before you fell?

Answer: No.

Question: At any time before you fell, was there any foreign objects or substance that you stepped on that you believe may have caused or contributed to your fall?

Answer: No.

. . . .

Question: At any time before you fell do you have any recollection of losing your balance and making any effort to try and regain your balance?

Answer:  No.

Question:  So in essence what you remember is you are walking and the next thing you know you are on the ground?

4

Answer:  Exactly.

. . . .

Question: You have told me already that in approaching the house you stepped up onto the walkway.  Correct?

Answer: I'm sure I did.

Question: Prior to your fall, did you make any effort to step down onto the sidewalk?

Answer: I don't think so.

Question: Do you know one way or the other?

Answer: No.

Question:  Would it be an accurate statement that you really don't know why you fell?

Answer:  Yeah.  Well, maybe not that I don't know why.  I don't know what you mean by that.  I mean the step just didn't seem like a step.  I didn't see it.  It was very dark.

Question:  But you don't even recall stepping off of that step.  Correct?

Answer:  No.  I think it was to[o] short to see it and you just kind of like, your foot goes out in the air or something.  I don't know.

Question:  In response to my other questions, you indicated that you don't recall step[ping] off the step.  Correct?

A-5734-17T3

Answer: No, I don't.

Question: You don't have any recollection of stepping down onto the sidewalk?

Answer: No because there was no markers. There was no indicators.

Question: I am not asking you that though. I am asking whether you have any recollection of stepping off the walkway down onto the sidewalk?

Answer: No. I just remember falling.

Question: Once your fall is over and you are basically lying on the ground. Correct? The sidewalk. Correct?

Answer: Yes.

. . . .

Question: When you say there wasn't a step to go down, are you referring now to the end of the walkway?

Answer: Yeah.

Question: And when you got to the end of the walkway were you able to see the step down?

Answer: No.

Question: Was there any artificial lights in the area of the step down at the end of the walkway?

Answer: No.

6

In her answer to an interrogatory asking her to describe her version of the accident, plaintiff stated:

> It was February 7, 2015, the first day working for a new family taking care of the dad. It was a cold winter day. I arrived in day light. When I left it was dark. The walk way was not properly lit. As I left, I locked the door and came down a flight of steps. Then I walked down a walk, before approaching my car, I fell to the ground. I was in terrible pain. I knew I must have fractured something somewhere. I looked around for someone to help but I was all alone. I tried to get up and the pain shooting through my arm wouldn't permit me to apply pressure to get up. My knee was also in pain.

Plaintiff alleges she did not see the drop off because it was dark and there was no warning or indication there was a three and one-half-inch step down at the end of the walkway. She was walking at a normal gait when she reached the drop off. She claims her leg went up into the air and she landed on the sidewalk.

Decedent's daughter, Carol Owen, testified decedent had owned the residence since 1962. The walkway was in the same condition during his ownership. She knew of no other accidents occurring on the property. Decedent passed away approximately two weeks after the accident.

Plaintiff's liability expert, Len McCuen, testified there is a street light located approximately eighty-five feet from the property. McCuen did not determine the amount of illumination provided by the street light.

A-5734-17T3

Following the completion of discovery, defendant moved to bar plaintiff's liability expert from testifying a trial, contending he rendered a net opinion. Defendant also moved for summary judgment. The trial court issued an oral decision and order granting both aspects of defendant's motion.

The trial court found plaintiff's liability expert's reports were inadmissible net opinions. The court found the expert's reliance on the BOCA[1] Code adopted in 1996 is misplaced because it was adopted long after decedent's home was constructed and was not made retroactive. Similarly, the other standards relied upon by the expert were not retroactive in effect and did not apply to decedent's home. As a result, the trial court found the expert's reports unreliable, and the opinions he issued inadmissible net opinions.[2]

The trial court further concluded summary judgment was appropriate, finding "plaintiff has not put forth any evidence to suggest that the drop-off was obscured to her by the fall, aside from it being dark outside. However, a decrease in viewing ability as a result of natural conditions cannot, without

---

[1] BOCA stands for Building Officials and Code Administrators.

[2] Plaintiff has not briefed the trial court's finding that her liability expert rendered an inadmissible net opinion. We deem the issue waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

more, substantiate a finding of a hazardous condition." The trial court granted summary judgment dismissing plaintiff's complaint. This appeal followed.

Plaintiff argues the trial court erred in granting summary judgment because: (1) there are factual and credibility issues to be decided by a jury; and (2) because defendant breached the duty of care owed to plaintiff, an invitee, to make the premises reasonably safe, including the duty to conduct reasonable inspections to discover dangerous conditions, and to remedy discoverable defects or warn invitees about the danger.

## II.

"Our court rules require summary judgment to be granted when the record demonstrates that 'there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014) (quoting R. 4:46-2(c)). The court "considers 'whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Id. at 406 (quoting Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995)). The trial court's "function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is

a genuine issue for trial.'" Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236 (2018) (quoting Brill, 142 N.J. at 540). Thus, summary judgment is properly granted "[o]nly 'when the evidence is so one-sided that one party must prevail as a matter of law.'" Ibid. (quoting Brill, 142 N.J. at 540).

"[T]he evaluation of every motion for summary judgment requires the court, trial or appellate, to review the motion record against not only the elements of the cause of action but also the evidential standard governing that cause of action." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). Hence, we may not "ignore the elements of the cause of action or the evidential standard governing the cause of action." Globe Motor Co. v. Igdalev, 225 N.J. 469, 480-81 (2016) (quoting Bhagat, 217 N.J. at 38). A trial court's determination that a party is entitled to summary judgment as a matter of law is not entitled to any special deference and is subject to de novo review. Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 415 (2016).

"In a premises liability case, the plaintiff has the burden of proving that the property owner's negligence caused her injuries." McDaid v. Aztec W. Condo. Ass'n, 234 N.J. 130, 142 (2018) (citing Jerista v. Murray, 185 N.J. 175, 191 (2005)). "To prevail on a claim of negligence, a plaintiff must establish four elements: (1) that the defendant owed a duty of care; (2) that the defendant

breached that duty; (3) actual and proximate causation; and (4) damages." Fernandes v. DAR Dev. Corp., Inc., 222 N.J. 390, 403-04 (2015) (citing Townsend v. Pierre, 221 N.J. 36, 51 (2015)). The duty of care owed by a property owner is a question of law to be decided by the court. Robinson v. Vivirito, 217 N.J. 199, 208 (2014). On the other hand, the elements of breach, proximate causation, and damages are ordinarily decided by the trier of fact. Scully v. Fitzgerald, 179 N.J. 114, 130 (2004).

III.

Historically, the duty owed to third parties by property owners was "governed by the status of the third person – guest, invitee, or trespasser – particularly where the relationship is clearly defined." Robinson, 217 N.J. at 209 (citing Monaco v. Hartz Mountain Corp., 178 N.J. 401, 414-15 (2004); Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502 (1997)). Plaintiff, who came by invitation to provide services to defendant, was a business invitee. Defendant owed plaintiff a duty of reasonable care to guard against dangerous conditions on his property that he either knew about or should have discovered by conducting a reasonable inspection. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993).

"A homeowner is intimately acquainted with his or her residence and consequently aware of many of the problems that remain hidden to the untrained or unfamiliar eye." Id. at 445. At a minimum, reasonable care requires a homeowner to warn a non-trespasser of any defects or dangerous conditions of which the homeowner is aware or should be aware. Ibid.

In some cases, expert testimony may be required to allow a jury to causally connect a particular injury of a plaintiff to a breach by a defendant when the question involves complexities beyond the ken of an average juror. Quail v. Shop-Rite Supermarkets, Inc., 455 N.J. Super. 118, 135 (App. Div. 2018). Plaintiff alleges the junction of the walkway and sidewalk was dangerous due to the unmarked three and one-half-inch elevation change, which was not visible at night due to the absence of adequate lighting. Evaluating the potential danger of an undisclosed and unlit walkway drop off at night does not involve complexities beyond the ken of an average juror.

As to causal connection, "it is the function of the jury to determine the condition of the property and the reasonableness of defendants' care, and to determine the comparative fault of each party." Filipowicz v. Diletto, 350 N.J. Super. 552, 561 (App. Div. 2002) (citations omitted). That being said, the mere possibility that the drop off caused the accident is insufficient to impose

liability.  <u>Hansen v. Eagle-Picher Lead Co.</u>, 8 N.J. 133, 141 (1951).  "While proof of certainty is not required, the evidence must be such as to justify an inference of probability as distinguished from the mere possibility of negligence on the part of the defendant."  <u>Ibid.</u> (quoting <u>Callahan v. Nat'l Lead Co.</u>, 4 N.J. 150, 154 (1950)).

While plaintiff could not precisely pinpoint the specific cause of her fall, there are sufficient facts from which a jury could reasonably infer the drop off proximately caused plaintiff's injuries.  Considering the evidence in the light most favorable to plaintiff, including the significant drop off at the end of the walkway, coupled with the inadequate lighting and the absence of any warning, it is reasonable to infer that the drop off, which was difficult to see at night, probably caused the accident.  While plaintiff was not able to provide a precise reason for her fall, a reasonable jury could infer from plaintiff's testimony that it was the three and one-half-inch drop off that triggered the fall.  Plaintiff fell while walking in a normal gait just as she reached the drop off.  The record discloses no other reason for the accident.[3]

---

[3] Notably, defendant does not claim plaintiff was talking or texting on a cell phone or otherwise distracted.  Nor does he claim her ability to see the drop off was blocked by an object she was carrying.  Additionally, there is no evidence plaintiff fell because her leg suddenly gave out due to an underlying medical condition.

A-5734-17T3

We conclude that genuine issues of material fact exist as to whether the pavement drop off was both hazardous and therefore a breach of the duty owed to plaintiff, and a proximate cause of plaintiff's trip and fall, sufficient to warrant the matter to proceed to trial. We also find genuine issues of material fact as to whether defendant contributed to a hazardous condition that caused plaintiff's accident, by failing to turn on the available outdoor lighting, and by failing to warn plaintiff of the drop off. Because genuine issues of material fact exist as to both breach of duty and causation, the trial court erred in granting summary judgment.

Reversed and remanded for trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5734-17T3